EASTERN DIST.
June, 1840.

STATE OF
LOUISIANA
vs.
JUDGE OF THE
PARISH COURT.

151 521
44 1089

15 521
119 893

15 521
123 824

STATE OF LOUISIANA *vs.* JUDGE OF THE PARISH COURT.

AN APPLICATION FOR A MANDAMUS.

A *mandamus* will not be allowed, to compel the judge of an inferior court to proceed in the trial of a cause forthwith, in which he has granted a continuance.

No appeal lies from the continuance of a cause, when there has been no final judgment.

This is an application for a *mandamus*, to compel the judge of the Parish Court to try the case of Kernan *vs.* Chamberlain & Beldin, forthwith. The applicants allege,

EASTERN DIST. that said cause was at issue the 14th May, 1840, and set
June, 1840. down for trial the 4th June following ; that on that day, the
STATE OF plaintiff, with great difficulty, procured the attendance of his
LOUISIANA witnesses, (twelve in number,) and was ready, and insisted
vs.
JUDGE OF THE on going to trial as soon as the cause was called ; but that
PARISH COURT. the defendants applied for a continuance of the cause, upon
the facts disclosed in an affidavit.

The plaintiff alleges, that the court granted the continu-
ance, although it was apparent, from a simple inspection of
said affidavit, that it did not entitle the party to a continu-
ance, and he strenuously opposed it, and pointed out the
defects and insufficiencies of the affidavit, but the judge
overruled his opposition, and the continuance was granted.

He prays that a *mandamus* issue, commanding the parish
judge to proceed forthwith in the trial of his cause, on the
ground that the continuance will cause him an irreparable
injury, &c. The plaintiff moved in this court for a rule on
the judge of the Parish Court, to show cause why the *man-
damus* should not issue, as prayed for. The court took the
case into consideration.

*Schmidt* and *Deslix*, supported the motion for the rule.

1. The plaintiff, in this suit, applies to the Supreme Court
to redress a *two-fold denial of justice*, committed, as he alleges,
by the parish judge, in continuing his cause, when the law
entitled him to have it tried.

"A judge who refuses, or neglects, to render justice *when
it is due*, betrays doubly his duty. For he not only deceives
the expectation of the sovereign who has delegated to him
the noblest portion of his authority, but he is wanting in
duty towards his fellow-citizens, to whom, as society is at
present organized, the administration of justice is indis-
pensable." Such is the language of some of the most
distinguished jurists of the age, who, in fact, only repeat the
sentiments of the legislators of every age.

2. That the legislation of Louisiana is not justly charge-
able with any omission on this head, as well as that it is the
province of the Supreme Court to take cognizance of the

present cause, and order a *mandamus*, will be obvious from the following considerations:

The facts alleged by the petitioner must be taken for true, and no one can doubt that they amount to *a denial of justice.*

The Code of Practice was originally composed in the French language, and many of its terms are derived from the jurisprudence of France, and, among others, the term " *deni de justice,*" which has been translated a *denial of justice.*

We must consequently look to the authors of that country for an explanation of its signification.

*Merlin's Rep. de Jurisprudence, vol.* 7, *Ve deni de justice,* defines it: "Le refus que fait un juge de rendre justice, quand elle lui est demandée;" and he adds, " ne pas rendre la justice quand elle est due, c'est en quelque façon commettre une injustice," &c.

*Toullier, vol.* 11, *p.* 263, *No.* 224, treating of delits and quasi delits, styles it " un retardement injuste de juger."

Common sense, and the plain construction of language, sanction these definitions, since it is obvious, that he who refuses to judge, when the law says he shall, violates the law as completely as if he had decided the cause contrary to law; and reason and justice equally require, that if there be a remedy in the latter case, there should also be one in the former.

3. In looking at the Code of Practice, we accordingly find, article 830, that one of the objects of a *mandamus* is to prevent a denial of justice; and if this law be still in force, and not contrary to the constitution, which is the fundamental law of the land, the Supreme Court will be guided by it.

That this article of the Code of Practice has been repealed, will certainly not be contended. We must, therefore, look to the constitution, to ascertain if it presents any obstacle to its execution.

*The Constitution, article* 4, *sections* 1 *and* 2, provide, in substance, that there shall be a Supreme Court, which shall

EASTERN DIST.
June, 1840.

STATE OF
LOUISIANA
*vs.*
JUDGE OF THE
PARISH COURT.

have *appellate jurisdiction only,* where the matters in dispute exceed three hundred dollars.

The constitutional restrictions are two-fold, viz.:

1st. Amount in litigation must exceed three hundred dollars.

2d. The jurisdiction must be *appellate.*

These barriers, solemnly imposed by the fundamental laws of the land, cannot be transcended by the legislature, nor by any other power, while the constitution remains unchanged ; but, within the limits thus fixed, the legislature has absolute power, and the judiciary cannot refuse to carry its laws into effect, when those laws are confined to the circle thus traced around them, without being guilty of a dereliction of duty.

Hence, the legislature possesses the power to designate in what cases appeals shall lie from interlocutory judgments, and if it had authorized appeals in all cases, instead of those only where such judgments cause *irreparable injury,* can it be doubted that the Supreme Court would have taken cognizance of such appeals ?

4. If it be true, therefore,

1st. That the parish judge has been guilty of a denial of justice ;

2d. That the law authorizes the plaintiff to apply to the Supreme Court for a *mandamus,* in order to make the parish judge correct an error into which he has fallen, no doubt involuntarily ; and

3d. That there exist no constitutional restrictions, which forbid the court to execute the law ;

It appears that the inevitable corollary, which follows from the above propositions, is, *that the mandamus must issue* : since the law is *positive,* it is *constitutional,* and the applicant has brought himself *within its provisions.*

5. Where a law is positive, the *utility* or *necessity* of its application, is an inquiry which does not appertain to the *judicial power.* Its province is, to determine how the law affects the rights of the parties litigant in any given case ; but not to decide the necessity, or utility, of such application. This may safely be entrusted to the discernment of the

suitors, who, alone, pay the penalty for having provoked a
decision which cannot profit them.

That the order of the court would be nugatory, or without effect, in the present case, is impossible.

*The first*, and most important effect of such a decision, will be to establish a precedent for the instruction and government of the inferior tribunals, in all similar cases.

*The second* effect, will be to circumscribe a supposed discretionary power as to the continuance of causes in the inferior courts, which the judges think they possess, even where the law has taken away all discretion.

*The third* effect, will be to enable the plaintiff to try his cause much sooner than he otherwise would be able to do, and thus save much unnecessary expense and trouble to all persons concerned, both parties, witnesses, &c.

*Morphy, J.*, delivered the opinion of the court.

This is an application for a rule on the judge of the Parish Court, in and for the parish and city of New-Orleans, to show cause why a *mandamus* should not issue, commanding him to proceed forthwith to the trial of this cause. It appears that when the case came on to be tried in the court below, it was ordered to be continued by the judge, on an affidavit made by one of the defendants, for reasons said to be insufficient in law; and notwithstanding an offer on the part of plaintiff, to admit that the witness alleged to be absent would, if present, swear to such facts as the defendant, who had moved for the continuance, might disclose under oath. We are of opinion that no *mandamus* should issue in a case like the present. We are called upon to revise an opinion expressed by an inferior tribunal, from which no appeal could be taken. We have never questioned the authority of the legislature to regulate the exercise of the appellate jurisdiction given to this court in all civil cases, in which the matter in dispute exceeds three hundred dollars. Art. 566 of the Code of Practice, provides that an appeal can be taken from interlocutory judgments, only when such judgments work an irreparable injury. Supposing that the judge in this case has erred, no irrepara-

A *mandamus*
will not be al-
lowed to compel
the judge of an
inferior court to
proceed in the
trial of a cause
forthwith, in
which he has
granted a contin-
uance.

EASTERN DIST.
*June,* 1840.

STATE OF
LOUISIANA
*vs.*
JUDGE OF THE
PARISH COURT.

No appeal lies
from the contin-
uance of a cause,
when there has
been no final
judgment.

ble injury can be said to flow from this order. The case stands continued, and we have no reason to believe that it will not be fairly tried at another term. Mere delay cannot be regarded as an irreparable injury; for this reason, it has more than once been held in this court, that no appeal lies from an order granting a continuance. 11 *Martin,* 274, *Fortin* vs. *Randolph*; 1 *Martin, N. S.*, 597, *Campton et al.*, vs. *Patterson.* Should we inquire into the alleged error in the order of the judge on the *mandamus* prayed for, we would be allowing an appeal from it *alio nomine;* and whenever, in the exercise of their discretionary powers, the judges of the inferior courts should continue a cause, on whatever grounds, we would be called upon to test the sufficiency and legality of such grounds. But even should we allow such a course to be pursued, we do not perceive what advantage would be gained by it, or what useful purpose would be answered. We could not fix any particular day for the trial of this cause; nor could we give it any preference or priority, over the other suits pending in the Parish Court. It would have to be set down as any other case, according to the rules of said court. Our opinion, then, on the order of continuance made below, could lead to no decree, promoting in any way the ends of justice; and would, moreover, place us in the awkward situation that, should another continuance be asked on the same grounds, and the judge should refuse it in pursuance of our opinion, the appeal which might afterwards be taken would, as to this part of the case, be from our own judgment, not from that of the inferior tribunal.

It is said that the judge has been guilty of a *denial of justice;* and we are referred to article 830, of the Code of Practice, as fully authorizing the remedy asked for. We are not prepared to say that there has been, in the present case, a denial of justice in the sense of the article above quoted. There has been, on the part of the judge below, no refusal to take cognizance of a case within his jurisdiction, or to act on the application of parties before him. He has pronounced on an incidental question presented to him in the progress of a cause; and if he has committed an error, it is one which

cannot interfere with the merits of the cause, if they be brought before us on a regular appeal. But this court, from its earliest organization, has always disclaimed a supervisory control over the inferior courts, in matters not incident to its appellate jurisdiction. In the case of *Winn* vs. *Scott*, we said, "that the expressions of the Code of Practice seem to embrace all possible cases, but that the authority there granted, must be considered in relation to the constitution, which allows this court appellate jurisdiction only; and its mandates must be confined to matters which have a tendency to aid that jurisdiction." 2 *Louisiana Reports*, 88.

We cannot interfere with the orders or interlocutory judgments of the inferior tribunals, which do not work an irreparable injury, or involve matters which may affect our appellate jurisdiction.

The plaintiff should take nothing by his motion.