No. 11,073.

THE STATE EX REL. WHITNEY IRON WORKS COMPANY VS. THE JUDGE OF THE TWENTY-SECOND DISTRICT COURT.

1. The holder of a promissory note which bears interest by its terms from maturity, can not claim that he is entitled as a matter of absolute right to a trial without a jury where, on suing the maker on the note, he claims interest from its date under an allegation of error, and where, averring that payment of the note is secured by a privilege, he seeks to have that privilege recognized and enforced through pleadings which disclose the fact that the existence of the privilege is a matter still in pais, requiring to be established by parol evidence.

2. Where, in a case so situated, defendant pleads the general issue, specially denies the existence of the privilege, and prays for a trial by jury, the judge, after hearing, contradictorily made, grants the application, the correctness of his conclusions can not be tested by mandamus proceedings directed against him to force him to try the case by the court alone.

3. The case was before him in such a form as to authorize him, and make it his duty to entertain defendant's motion, and judicially determine the rights asserted in that motion on the one hand and denied by plaintiff's opposition on the other.

APPLICATION for Mandamus.

*Robert G. Dugué* for the Relator.

----

The Respondent *in propria persona.*

----

*E. Howard McCaleb* for Theodore S. Wilkinson, Respondent.

----

APPLICATION FOR WRIT OF MANDAMUS.

The opinion of the court was delivered by

NICHOLLS, C. J.    The relator, the Whitney Iron Works Company, instituted a suit in June, 1892, in the District Court for the parish of Plaquemines, against Theodore S. Wilkinson, in which, alleging that the defendant was indebted to it in the sum of $3062, with interest thereon at the rate of 8 per cent. per annum thereon from the 7th day of December, 1891, until final payment; that payment of the same was secured by privilege on a mill and machinery mentioned in the petition and described in certain accounts annexed thereto, it prayed for judgment for said amount and for a decree recognizing the privilege and ordering its enforcement.

Annexed to plaintiff's petition and making part of it were eight accounts and a promissory note of the defendant dated December 7, 1891, payable on February 1, 1892, fixed, to the order of plaintiff for value received for the sum of $3062, with interest thereon at the rate of 8 per cent. per annum *from maturity* until paid.

Plaintiff's demand was based on that note, save as to a certain part of the interest claimed in the petiion, *as to which* there is a departure from the terms of the note. That bears interest from *maturity,* whilst the allegation of the indebtedness of the defendant and the prayer for judgment against him is from *its date.*

The plaintiff, in reference to this variance, alleges that there was an error in making the note bear interest from its maturity. That it was given in partial liquidation of an indebtedness to plaintiff by Wilkinson, and that by and under the agreement of parties the interest on it should have been made to commence from its date.

The plaintiff states in reference to the note that under a contract which resulted from the *verbal* acceptance of the proposal or offer to him made by the plaintiff and contained in the document marked "A," annexed to his petition, it had sold and delivered to the de-

fendant a certain sugar mill, machinery, etc., and furnished all the material, labor, etc., the whole under the said contract and subsequent *verbal* requests of the defendant.

That the price of said mill and machinery, including the labor, freight, etc., which were required, and which were furnished and paid for by petitioner to complete and perfect the contract, with the additions thereto and the incidents thereof, amounted to $8345.20, as shown by eight detailed accounts annexed, but that plaintiff had received on account at various times, in cash and merchandise, as shown by an annexed statement, the sum of $3030.30, leaving a balance due of $5314.97.

That the correctness of all said accounts had been frequently acknowledged by said Wilkinson, who had promised to pay the balance, and who, in order to represent the same, had given the plaintiff two notes, one of which was that declared on.

. That the proposed contract and all these statements and accounts and the notes had been recorded in the parish of Plaquemines, where Wilkinson resides, and where the mill and machinery were, on the affidavit of plaintiff's president, giving an explanation of the same.

That said note was due and unpaid.

At the expiration of the legal delays the plaintiff took a judgment by default, but on the morning of the day upon which it could have been confirmed, the defendant filed an answer, in which he pleaded the general issue, specially denied the correctness of the accounts annexed to plaintiff's petition, specially denied that plaintiff had any privilege, as claimed by it, and prayed for and obtained an order that the case should be tried by a jury.

It seems that plaintiff's attorney was not in court when this order was granted, but appeared shortly after, and ascertaining that it had been made, at once protested and demanded that the case should be fixed for trial and tried by the judge.

On this opposition being made, the district judge expressed a willingness to hear both sides as to whether or not his order should be vacated, and after such argument he ordered it to stand or remain as made.

It appears by an extract from the minutes that during the argument plaintiff's counsel offered to discontinue (strike out) the allegation as to interest being due from the date of the note, and the

prayer for such interest, if in the opinion of the court the said allegation and prayer had any bearing upon the case.

The judge, stating that the order must stand or fall according to the state of the pleadings existing when it was rendered, declined to receive or grant the discontinuance, and, as a matter of fact, the pleadings remain (under such circumstances) as they were originally framed.

The plaintiff claimed that its suit fell under the provisions of Art. 494 of the Code of Practice, which declares that "all suits against makers and endorsers of promissory notes, drawers, endorsers and acceptors of bills of exchange, and generally all suits brought in unconditional obligations to pay a specific sum of money, shall be tried without a jury, unless defendant shall make oath that his signature to said note or other obligation is not genuine or he expects to prove that the same had been obtained through fraud or error or want or failure of consideration, or in cases where the defendant in his answer may set up a plea of compensation or reconvention and make oath to the truth of all the allegations in said plea or answer."

The defendant, on the other hand, contended that under the pleadings of the plaintiff's petition and those of his own answer this pretension was unfounded. That plaintiff had himself alleged "error" in the note sued on and claimed an indebtedness *dehors* the note, and that *quoad* that portion of the demand defendant was not required to take an oath.

The court having adopted the views of the defendant, the plaintiff has applied to this court for a writ of *mandamus* directed to the judge of the Twenty-second Judicial District aforesaid, commanding him to try the said case without a jury. Whilst in the petition for the writ relator advances positively his right to proceed in the case without a jury and maintains the ruling of the court to be not sustainable, it nowhere charges that the judge acted arbitrarily or oppressively. State ex rel. Geo. Nicholson vs. Judge Civil District Court, 37 An. 842.

The complaint, as brought before us, is that he has decided erroneously, not that the matter before him was in such a form or situation as to withdraw from him the exercise of his judgment in determining between the right asserted in the motion on the one hand, and denied in the opposition on the other.

It is manifest from the petition that the burden of relator's complaint is not so much directed to the submission to the jury of the issues involved in the case as to the delays which will result from granting the motion, for it informs the court that the effect of so doing will be to unavoidably delay the trial until next April, when, should the jury disagree, an indefinite postponement will follow, and it very unmistakably intimates that the real object of defendant's motion was directed to that very end.

When the defendant submitted his application for a jury to the court, and it was called on to pass upon it, it was the court's bounden duty to limit its inquiry to the question whether the application was was well founded or not; if it *was*, the motives which may have influenced the defendant in presenting it were not before it, nor were the *consequences* which might flow from granting the legal right to be considered. State ex rel. Leeds vs. Judge Third District Court, 32 An. 545; 34 An. 5; 7 An. 382; 15 La. 526.

If any hardship were to result to plaintiff it would be one springing from the jury system, not the action of the court. As the District Court was thus restricted, so are we—even more so.

Relator speaks of the situation as being one occasioned by an *ex parte* order of a judge. Whatever may have been its original character, it does not bear that character when it reaches us. It comes before us, not as the *ex parte* order of a judge, but as a "court order" rendered contradictorily between the parties in interest. When a matter has reached that point and comes to us in that form it should ordinarily be sent to us in the exercise of an appellate jurisdiction, either as one of the issues to be passed upon on an appeal from a final judgment, or as an issue to be specially submitted under Art. 566 of the Code of Practice in the matter of an interlocutory judgment working irreparable injury.

An exceptional case should be presented to justify us in entertaining such a matter from the standpoint of our supervisory jurisdiction.

The books are filled with decisions declaratory of the principle that the writ of mandamus is not to be permitted to be substituted for an appeal, and dwelling upon the violation of the rules of correct practice in detaching the rulings of a court from their regular position, and making them the subject of collateral fragmentary decision *dehors* the suit, and in this way trying cases piecemeal, and by

indirection. This subject is alluded to by Mr. Justice Manning in the case of the State ex rel. Morgan's Railroad Company vs. the Judge of the 21st Judicial District Court, 36 An. 394, when, speaking of the remedy of mandamus, and the effect of the Constitution of 1879 upon it, he said that "while the range of cases in which we may issue the writ is thus enlarged it does not follow that it may be invoked always instead of an appeal.

"It would revolutionize our jurisprudence to hold that every right that was formerly enforced by appeal, and every wrong that was formerly redressed by appeal, can now be enforced or redressed by mandamus when an emergency seems to require or invite it.

"The relator urges that the remedy by appeal is too slow, and that parties were relegated to that remedy under former Constitutions because of the lack of that supervisory control which we now have, and which he conceives to have been given us in order that we may compel the judge to decide as we should decide were the case before us. This would hew a short road between the lower and the appellate court that would soon be blocked by the crowd of traveling litigants."

Whilst we do not deem it would be wise to lay down any inflexible rule which is to govern our action in this matter, but best to leave each case to stand on its own particular facts, we think it would be safer for litigants who desire to have recourse by mandamus against "court" rulings to limit their applications ordinarily to cases where the matter submitted to the court, although disposed of by it "judicially," was disposed of in the performance of a duty ministerial in its nature rather than judicial.

In the case of the State ex rel. Johnson vs. Judge, 40 An. 854, speaking of the range of our inquiries in mandamus matters, this court said that "in a mandamus proceeding we are not at liberty to inquire whether the judge exercised a sound and legal discretion, but to simply ascertain whether he had *any* discretion in the premises. His *exercise* of discretion can only be reviewed on appeal." See also Patton vs. Judge, 40 An. 393.

Is there any foundation for a mandamus in this case under an application of the principles we have just enunciated?

As the motion for a jury was presented, in the form in which it was presented to him, the district judge was justified in believing—even if not correct in deciding, that the defendant was entitled to a jury,

trial—the question was sufficiently an open one to authorize him to proceed to weigh and decide it as one fairly debatable.

The court very evidently, under respondent's answer, thought that a plaintiff who relies upon the the provisions of Art. C. P. 494 to sustain him in resisting an application of the defendant for a jury must present himself before the court with his whole claim liquidated, and not only liquidated, but that fact evidenced by the signature of the defendant, and that if the situation was such that any portion of the claim had to be proved by parol testimony *dehors* the instrument declared on, the plaintiff, was outside of the letter of the law he invoked, and that even were he *in doubt* on the subject, his duty was to grant the application under the view expressed by this court in State ex rel. Leeds vs. Judge, 32 An. 545. It was there said:

" The apprehended inconvenience or injury, whether founded or not, consequent upon the delay to which the relator might be subjected by a trial of the case by a jury, are entirely foreign to the issue now presented, and must be left out of view. It is wisely provided by law that whenever parties desire to have their differences adjusted rather by a jury than a judge sitting by himself they will, *as a rule*, on application, be entitled to that privilege. They can not be refused such a valuable right unless the denial is clearly justified. There exists no doubt some exception to the provision, but the complexion of the cases thus taken out is not easy to be mistaken."

The court found, as this court finds, that whilst relator's suit was, as to the principal, based upon a promissory note, yet as to the conventional interest demanded he departed from the terms of the note, claiming interest, not from maturity, as that instrument showed, but from its date, on an allegation of " error," and that this increased interest and this error had to be established by outside testimony; the court also found that whilst relator averred that defendant's indebtedness to it was secured by a privilege which it was seeking to enforce, the proof of the facts upon which the existence of that privilege was to depend were facts still *en pais*, necessitating the introduction of parol testimony. The note sued on not stating the consideration and being connected with no written evidence, either by paraph or by reference, it found that under relator's pleadings the "contracts," from which he states the privilege arose, came into existence from the *verbal* acceptance by the defendant of

"proposals" of contract to him made by the relator, and that it is nowhere claimed or pretended that there exists any written evidence of these contracts.

Under this condition of the pleadings and facts we hold, as we have already said, that the court below was authorized to weigh, and, by the exercise of its judicial discretion, to determine whether or not such a case was before it as *forcedly cut off* a jury trial.

Whether the conclusions reached are correct we are not called on here to say. In order to make the writ of mandamus peremptory we would have to presently determine that question and *undo* what has been affirmatively done, for the case is not one of inaction by the court—it has acted—it has decided.

It has been well said in State ex rel. Bryan vs. Judge, 36 An. 112, that "a mandamus issues to proceed and not to recede—to do and not to undo;" and though there may be cases where the *writ* has been resorted to directly requiring certain things to be done in spite of prior action of a judge ruling to the contrary, we think they will be mostly found to be cases where the prior action was of such a character or taken under such circumstances as to justify and authorize its being absolutely ignored, or where new conditions have arisen since such action was taken. The present is not one of that character.

Relator relies very much upon State ex rel. Chism & Boyd vs. Judge, 34 An. 1177, but that case differs from this in its facts and its pleadings. There was no allegation made there by plaintiff himself as to an error in the obligation he was suing upon and for which a correction was sought, and the accessory obligation of pledge declared on was evidenced by an authentic act identified with the note declared on, both principal and secondary obligation bearing the signature of the defendant.

In reaching our conclusion in this matter, the decisions in Cohn vs. Judge, 41 An. 43, and Improvement Company vs. Judge, 41 An. 369, have not escaped our attention.

Relatively to relator's offer to strike out its allegation as to error and that portion of its prayer based thereon, it may be well to say that it was a conditional, not an absolute offer; that this action of the judge on that subject is only incidentally alluded to and that under the pleadings it is not an issue in the case, and that besides,

State ex rel. Bassetti vs. Judge.

were that allegation and prayer stricken out, there would still remain features in plaintiff's suit sufficient to defeat its present application.

For the reasons herein assigned the writ of mandamus prayed for is refused.

Rehearing refused.