(98 South. 175)

No. 26241.

STATE ex rel. MILLING v. LOUISIANA PUBLIC SERVICE COMMISSION.

(Nov. 12, 1923.)

*(Syllabus by Editorial Staff.)*

1. **Contempt** &#8660;66(1)—**No appeal from judgment or sentence of contempt by ordinary process.**

There is no appeal by the ordinary process from a judgment or sentence for contempt of court.

2. **Public service commissions** &#8660;1—**Louisiana Public Service Commission not a "court."**

The state Public Service Commission is not a "court."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Court (Of Justice).]

3. **Public service commissions** &#8660;19(4)—**Contempt proceedings of Commission subject to supervisory jurisdiction of Supreme Court.**

Contempt proceedings of the state Public Service Commission are subject to the supervisory jurisdiction of the Supreme Court, in view of Const. 1921, art. 6, § 4, par. 3, empowering the Public Service Commission to summon and compel the attendance of witnesses,

swear witnesses, compel the production of books and papers, take testimony under commission, and punish for contempt "as fully as is provided by law for the district courts."

**4. Prohibition ⬤⇒18 — Public service commissions ⬤⇒19(4)—Certiorari and prohibition to prevent Public Service Commission from compelling relator to show cause why he should not be punished held not premature.**

Proceedings for certiorari and prohibition by one cited to show cause why he should not be punished for contempt of the state Public Service Commission are not premature, though the commission has not condemned or punished relator, since, if the commission had no right to punish relator, it had no right to compel him to show cause why he should not be so punished.

**5. Public service commissions ⬤⇒19(4) — Chairman held not authorized to order attorney to show cause why he should not be punished for contempt.**

It requires formal action on the part of the state Public Service Commission to institute proceedings to punish for constructive contempt, and the chairman had no authority to order an attorney to appear before it and show cause why he should not be punished for contempt.

**6. Public service commissions ⬤⇒19(4)—Formal charge necessary before state Public Service Commission may punish for contempt.**

A formal charge or complaint specifying the acts supposed to have been committed in contempt or disregard of the Public Service Commission is necessary, before the Commission may punish for contempt.

**7. Public service commissions ⬤⇒19(4)—Letter from attorney to commission in respect to rejected tariff held not contempt.**

Where the state Public Service Commission had rejected a proposed storage in transit tariff offered by an attorney for an oil pipe line company, a letter from the attorney to the secretary of the Commission, stating that the attorney and his client must regard the action of the Commission "as purely arbitrary and as such, unjust, unreasonable, and illegal," *held* not to constitute contempt of the Commission.

**8. Public service commissions ⬤⇒19(4)—Notice of intent to disregard orders of Public Service Commission held not contempt.**

That an attorney, in response to a rejection of storage in transit tariffs submitted by him for an oil pipe line company, stated that his client would nevertheless, offer storage in transit service, *held* not contempt of the Pub-

lic Service Commission, the Commission having no right to add to the penalties prescribed by Const. 1921, art. 6, § 6.

**9. Public service commissions ⬤⇒19(4)—Scope of power of Commission to punish for contempt stated.**

The main reason why the state Public Service Commission was, by Const. 1921, art. 6, § 4, invested with authority to punish for contempt, was to enable the Commission to enforce its authority to summon witnesses and compel their attendance, to compel the production of books and papers, and to take testimony under Commission.

**10. Public service commissions ⬤⇒19(4) — Commission held not to have jurisdiction in contempt proceedings.**

Where the chairman of the Public Service Commission by telephone directed the secretary to issue a rule for contempt because of a letter sent to the secretary relative to a rejected tariff, but no proceedings were pending relative to such tariff, and the accused had not appeared before it, the Commission had no power to punish for contempt, in view of Revised Statutes 1870, § 125, defining contempt of court, and of Code Prac. art. 131, amended and re-enacted by Act No. 190 of 1894, prescribing the penalty and Act No. 21 of 1906, expanding the power to punish for contempt.

St. Paul, Dawkins, Overton, and Thompson, JJ., dissenting.

Certiorari and prohibition by the State, on the relation of Thomas M. Milling, against the Louisiana Public Service Commission, to prevent the Commission from compelling relator to attend a meeting of the Commission, to show cause why he should not be punished for contempt of its authority. Rules for contempt annulled.

Thigpen, Herold, Lee & Cousin, Wise, Randolph, Randall & Freyer, and Blanchard, Goldstein & Walker, all of Shreveport, Bullock & Warren, of Ruston, W. M. Phillips, Thatcher & Webb, Pugh & Boatner, Barnette & Roberts, Smitherman & Tucker, L. Percy Garrott, and Crain, Jackson & Johnson, all of Shreveport, for relator.

Huey P. Long, of Shreveport, for respondent.

By the WHOLE COURT.

O'NIELL, C. J. This is a proceeding by certiorari and prohibition to prevent the Public Service Commission from compelling the relator to go from his home and business in Shreveport to the Commission's place of meeting in New Orleans, to show cause why he should not be punished by the Commission for contempt of its authority.

Relator is the attorney for the Standard Pipe Line Company, Inc., under the jurisdiction of the Public Service Commission. On the 8th of August, 1923, he addressed a letter to the secretary of the Commission, in which he sent a proposed tariff, or set of rules and charges, called "Louisiana local tariff No. 3," prepared by the secretary of the pipe line company, on storage in transit of crude petroleum. The letter was sent from Shreveport to the office of the Commission in Baton Rouge, where its domicile is established by the Constitution. Here is a copy of the letter:

"Dear Sir: I hand you herewith the proposed storage in transit tariff to be issued by the Standard Pipe Line Company, Inc., together with a letter from the secretary, asking that authority be issued for the filing.

"This letter was forwarded to me and I presented this application to Mr. Long, here at Shreveport, before forwarding it to you. Mr. Long asked me to forward the application to you, and stated that, after a consultation with his associates, he would give us an answer as to whether or not it would be accepted and authority issued.

"Kindly file the application, and await instructions from Mr. Long.

"Yours truly,        T. M. Milling."

Mr. Long is one of the three members of the Public Service Commission, and is its chairman. He resides in Shreveport, where he is engaged in the practice of law.

On the 9th of August, the secretary of the pipe line company, in the Baton Rouge office of the company, addressed a letter to the Public Service Commission there, inclosing a copy of the proposed tariff and rules, viz:

"Gentlemen: Please authorize this company to publish and apply the rate named in its Louisiana local tariff No. 3 and the rules and regulations applicable thereto, as per copy of said tariff hereto attached."

On the 9th of August, the secretary of the Commission wrote a letter to relator, acknowledging receipt of the proposed tariff, and saying that relator would be advised in due course of the action taken on the application. On the same day, the secretary of the Commission wrote to the chairman, in Shreveport, viz.:

"I am in receipt of a letter from Mr. T. M. Milling, with which he sent proposed storage in transit tariff of Standard Pipe Line Company, Inc. He says that he presented the application to you and that you directed him to forward it here to be held until you had conferred with your associates as to its approval or nonapproval.

"This is just to let you know that it is here. Please let me know at your convenience what is to be done with it, if anything.

"With kind regards, I am, sincerely yours," etc.

Relator was informed, by letter from the secretary of the Commission, dated the 13th of August, 1923, that the proposed tariff had been rejected, viz.:

"Dear Sir: Referring to your letter dated August 8, transmitting proposed storage in transit tariff, Louisiana local tariff No. 3 of Standard Pipe Line Company, Inc., I have to advise that this proposed tariff has been submitted to the Commission and I am directed to inform you that the same has been rejected and may not be made effective on Louisiana intrastate pipe line movements. Yours very truly," etc.

Relator's reply to the secretary of the Commission, dated the 15th of August, is what gave rise to the proceedings to condemn and punish him for contempt, viz.:

"Dear Sir: I have your letter of August 13, in which you state that the proposed 'storage in transit tariff' tendered the Louisiana Public Service Commission in my letter of August 8th, has been rejected, and that this company is directed not to make said tariff effective on intrastate pipe line movements.

"I do not understand the action of the Commission, as shippers of crude petroleum are

entitled to storage in transit privileges. Such service is offered by all common carrier pipe lines throughout the United States, and is required by the Interstate Commerce Commission and all state Public Service Commissions.

"In view of the fact that the Commission has given no reason for its refusal to allow the storage in transit service, tendered to our shippers in the tariff forwarded to you in my letter of August 8th, we must regard its action as purely arbitrary, and, as such, unjust, unreasonable and illegal.

"We are tendering herewith the required number of printed copies of the proposed tariff.

"Our shippers will be notified that we are offering the service. If any shipper makes application for storage in transit privileges, and complies with the requirements of the tariff, we will perform the service.

"Yours very truly,     T. M. Milling."

The secretary of the Commission forwarded Mr. Milling's letter to the chairman of the Commission in Shreveport, in a letter dated the 17th of August, saying:

"For your information, I am inclosing copy of a letter received this morning from Mr. T. M. Milling, attorney for the Standard Pipe Line Company, Inc., with respect to the proposed 'storage in transit' tariff of that company, together with a copy of the tariff.

"In accordance with your instructions, I, some days ago, notified Mr. Milling that the tariff he submitted had been rejected by the Commission, and this is his response.

"I have not acknowledged Mr. Milling's letter and will not do so until I hear from you. Please look it over and advise me your wishes. Sincerely," etc.

On the 20th of August, the chairman of the Commission, in Shreveport, instructed the secretary of the Commission, in Baton Rouge, by telephone, to issue a rule upon Mr. Milling, and upon the secretary of the Standard Pipe Line Company, Inc., to appear in person before the Commission, in the municipal council chamber, in the city hall, in New Orleans, on the 31st of August, to show cause why they—each of them—should not be adjudged in contempt of the Commission and be sentenced and fined. The secretary prepared the orders, or subpœnas, addressing them, respectively, to Mr. T. M. Milling

and to H. T. Austermell, the latter being secretary of the pipe line company. The subpœnas were worded so that each party addressed was ordered to testify in a contempt proceeding against the other, viz.:

"Louisiana Public Service Commission.

"Standard Pipe Line Company, Inc., Ex parte. No. 292.

"In re Storage in Transit Rates and Rules.

"To T. M. Milling: You are hereby cited and required to appear in person before the Louisiana Public Service Commission in the council chamber of the city hall in New Orleans, Louisiana, at 10 o'clock a. m., on August 31, 1923, in the above numbered and styled cause, and then and there to show cause why you should not be adjudged in contempt of the Commission and sentenced and fined according to law; and you are further required to appear for the purpose of giving testimony involving all other matters in the case pending before the Commission for its legal determination, and particularly with regard to contempt proceedings directed to H. T. Austermell.

"By order of the Commission:
          "Henry Jastremski, Secretary.
"Baton Rouge, Louisiana, August 20, 1923."

The orders or subpœnas were sent to Shreveport for service upon Messrs. Milling and Austermell, in a letter written by the secretary of the Public Service Commission to the chairman, dated the 20th of August, viz.:

"In accordance with your directions over the telephone this morning, I have prepared citations in the Standard Pipe Line matter. An original and two copies of each are inclosed. I suppose you will have the sheriff of Caddo serve them and make the proper return on the duplicates. If he makes the returns to you please forward them to me so that I can place them in the record and have them available on the date of hearing. I suggest this because I know you are busy and if you keep them on your desk we may land in New Orleans without a complete record.

"Sincerely yours,
          "Henry Jastremski, Secretary."

When the sheriff of Caddo parish served the order or subpœna upon Mr. Milling, he

served also another order upon him, dated the 20th of August, 1923, viz.:

"Louisiana Public Service Commission.
"Standard Pipe Line Company, Inc., Ex parte.—No. 292.
"In re Storage in Transit Rates and Rules.

"To T. M. Milling: In addition to the rule for contempt heretofore issued this day in this cause against you, T. M. Milling, you are hereby cited and required to appear in person before Louisiana Public Service Commission in the council chamber of the city hall at New Orleans, Louisiana, at 10 o'clock a. m. on August 31, 1923, and then and there to show cause whether you should or should not be further adjudged in contempt of the Commission for having, subsequent to the issuance of the previous rule this day issued to you, forwarded, sent and delivered messages to member or members of the Louisiana Public Service Commission threatening harm and violence if action in the contempt proceeding already issued this day is taken; said proceeding growing out of official action of member or members of the Louisiana Public Service Commission.

"By order of the Commission:
"Henry Jastremski, Secretary.
"Baton Rouge, Louisiana, August 20, 1923."

It is admitted in the answer filed by the Commission, in this court, that the two orders or rules for contempt, served upon T. M. Milling, were served at the same time. Therefore it is not possible that Mr. Milling sent a threat to a member of the Commission after the service of the first rule for contempt and before the issuance of the second rule. The alleged threat, if made at all, must have been made before the first rule for contempt was served. Perhaps Mr. Milling knew before the rule for contempt was served that it had been issued.

Inasmuch as some of the members of this court are of the opinion that we have not supervisory jurisdiction over the contempt proceedings of the Public Service Commission, we will discuss that question before taking up the merits of relator's complaint. The Commission itself does not question our jurisdiction. On the contrary, in Standard Oil Co. v. Louisiana Public Service Commission, No. 26022, ante, p. 557, 97 South. 859, the Commission admitted that its authority to punish a person for contempt was a judicial power of function, which was subject to the supervisory jurisdiction and control of this court. Of course, the Commission's admission of our supervisory jurisdiction over it is not controlling, because the jurisdiction of a court, ratione materiæ, is conferred only by the Constitution and without regard for anybody's willingness or consent.

They who believe that this court has not supervisory jurisdiction over the contempt proceedings of the Public Service Commission base their opinion upon the fact that the Commission is not, strictly speaking, a judicial tribunal, or, eo nomine, a court.

The Constitution declares (in the first paragraph of section 10 of article 7) that the Supreme Court shall have control and general supervision over all inferior courts. The Constitution also declares (in the third paragraph of section 4 of article 6) that the Public Service Commission—

"may summon and compel the attendance of witnesses, swear witnesses, compel the production of books and papers, take testimony under commission, and punish for contempt as fully as is provided by law for the district courts."

Of course, if we should ignore this statement in the Constitution, in substance, that, in so far as the Public Service Commission may condemn and punish a person for contempt, its jurisdiction is like that of the district courts, it might well be doubted that the Commission's proceedings condemning and punishing a person for contempt, even though such proceedings are essentially judicial or quasi judicial proceedings, come under this court's control and general supervision over inferior courts. But, in construing the language of the Constitution, every expression is deemed—more surely than are the expressions in the acts of the Legislature—to have

been chosen carefully and used advisedly. Therefore, the qualifying expression, "as fully as is provided by law for the district courts," must have its meaning and effect. A majority of us are of the opinion that we would contradict that expression in the Constitution if we should hold that the district court, at the domicile of the Public Service Commission, or any other district court, for that matter, has jurisdiction to review a contempt proceeding on the part of the Public Service Commission, and, by injunction or otherwise, to interfere with the Commission's authority to condemn and punish a person for contempt, "as fully as is provided by law for the district courts."

The members of this court are unanimous in the opinion that the constitutional convention did not intend that the jurisdiction of the Public Service Commission to condemn and punish people for contempt of the Commission's authority should be final. There is no reason why it should be. The only question, therefore, is whether this court, or the district court in Baton Rouge, has jurisdiction to prevent an abuse of the authority of the Public Service Commission to condemn and punish a person for contempt.

The Railroad Commission of Louisiana, predecessor of the Public Service Commission, had, under article 284 of the Constitution of 1898 and of 1913—

"the power to summon and compel the attendance of witnesses, to swear witnesses, and to compel the production of books and papers, to take testimony under commission, and to punish for contempt as fully as is provided by law for the district courts."

[1] The language is almost literally the same in the third paragraph of section 4 of article 6 of the Constitution of 1921. Under section 5, the orders of the Commission fixing or establishing any rate, fare, toll or charge for any commodity furnished or service rendered or to be rendered by any common carrier or public utility, are subject to an appeal to the district court in Baton Rouge, by the filing of a suit there within 90 days, etc. But there is no such provision for an appeal from the Commission's orders or proceedings condemning and punishing a person for contempt. If such proceedings of the Commission were subject to the equity jurisdiction of the district court in Baton Rouge, they would, in that indirect way, come under the supervisory jurisdiction of the Supreme Court. But it seems to a majority of us more in accord with the language of the Constitution that the contempt proceedings of the Public Service Commission should be under the direct supervision and control of the Supreme Court, than that a district court should, by means of injunction or other equity process, sit in judgment upon the right of another tribunal to condemn and punish a person for contempt of that other tribunal's authority—especially when that other tribunal's authority to punish for contempt is the same "as is provided by law for the district courts." That means that the Public Service Commission's power or jurisdiction to punish people for contempt is subject to the same restrictions or limitations that are provided by law for the district courts; and the most appropriate of those restrictions or limitations, in that respect, is that the district courts are subject to the control and general supervision of the Supreme Court. For there is no appeal, by the ordinary process, from a judgment or sentence for contempt of court. Ex parte Wood, 30 La. Ann. 672; State ex rel. Farmer v. Judge, 31 La. Ann. 118; State ex rel. De Buys v. Civil Sheriff, 32 La. Ann. 1225; State ex rel. Brown v. Houston, 35 La. Ann. 1195; In re State ex rel. Hero, 36 La. Ann. 355; State ex rel. Barthet v. Judge, 40 La. Ann. 434, 4 South. 131; State ex rel. Kiernan v. Judge, 41 La. Ann. 314, 6 South. 539.

[2] All of the statutes of this state on the subject of the power of the district courts to punish for contempt use the expression "con-

tempt of court." Code of Practice, arts. 131 and 132; Rev. Stat. §§ 124 and 125; Act 190 of 1894; Act 21 of 1906. They do not in terms apply to contempt of the authority of any other tribunal than a court. The Public Service Commission is not a court. But that fact does not forbid the Commission's being subjected to the laws governing contempt of court. Section 17 of article 19 of the Constitution, repeating what was said in the preceding Constitutions, says that the power of the courts to punish for contempt shall be limited by law. Although, in terms, that refers only to courts, it is surely applicable to the Public Service Commission—not that the Public Service Commission is a court, for in fact it is not a court—but because the Constitution elsewhere says, in substance, that the Public Service Commission's power to punish for contempt shall be subject to the laws that limit the power of the district courts to punish for contempt.

The idea of an administrative board being directly under the supervisory jurisdiction of a court is not at all new. 32 Cyc. 598. In 22 R. C. L. 13–14, it is said, of the writ of prohibition:

"While there are cases which hold that properly speaking the writ can only issue to a court, the writ is not restricted in its operation to courts eo nomine. Accordingly the writ of prohibition lies from a superior court, not only to inferior judicial tribunals, but also to inferior ministerial tribunals, possessing incidentally judicial powers, and known as quasi judicial tribunals, and also in extreme cases to purely ministerial bodies, when they usurp and attempt to exercise judicial functions. In other words it seems not to be necessary that the tribunal to which the writ issues shall actually possess any judicial power. It is enough if it is attempting to exercise such power in a particular case without lawful authority. Although the tribunal sought to be restrained is a court, the action in question may not be judicial, and though it is clearly not a court in the ordinary acceptation of the term, such action may be judicial in its nature, and therefore, in the one case the writ must be denied, though the tribunal against which it is sought is by law denominated a court, and in the other

the writ must be granted, though the tribunal is nowhere spoken of as a court."

[3] Our ruling in this case, that the contempt proceedings of the Public Service Commission are subject to the supervisory jurisdiction of this court, is not to be contrued as declaring the Commission a court, in any sense, or as declaring any other of the Commission's proceedings subject to the supervisory jurisdiction of this court. The ruling in this case is founded upon the provision in the third paragraph of section 4 of article 6 of the Constitution, subjecting the contempt proceedings of the Public Service Commission to the laws governing such proceedings of the district courts; which provision in the Constitution, of course, is not applicable to any other nonjudicial tribunal that might be given the power to punish for contempt of its authority.

[4] The respondent, Commission, has pleaded that this proceeding for certiorari and prohibition is premature, because the Commission has not yet condemned or punished relator for the alleged contempt. The answer to the plea of maturity is—and it is a sufficient answer—that, if the Public Service Commission has no right to punish Mr. Milling for the alleged contempt, the Commission is also without right to compel him to suffer the inconvenience and humiliation, to say nothing of the expense, of going from his home and business in Shreveport to answer in person before the Commission in New Orleans, why he should not be punished for contempt.

The causes for which relator contends that the orders of the Public Service Commission, served upon him, are invalid, are enumerated thus:

First. That the documents do not contain any specification or statement of facts that would constitute contempt, either direct or constructive.

Second. That the documents do not recite

—and the certified record filed by the Commission in this court shows that it is not a fact—that any affidavit or charge or complaint against relator, was filed with the Public Service Commission, by the Commission or any member thereof, or by any one else.

Third. That the rules for contempt, served upon relator, were not issued on the authority or orders of the Commission, but were issued by the secretary of the Commission, on an order issued by the chairman, from his office in Shreveport, where the Commission was not and had not been in session; all of which is shown by the aforesaid record, and particularly by the letter written by the secretary of the Commission to the chairman, sending him the aforesaid rules for contempt.

Fourth. That, on the date on which the aforesaid rules were issued, there was not, and had not been, a case pending entitled "Standard Pipe Line Company, Inc., Ex parte. No. 292. In re Storage in Transit Rates and Rules," because the application of the Standard Pipe Line Company, Inc., to file a tariff with the Commission had been rejected, on the 13th of August, and relator had been notified thereof, as shown by the letter of the secretary, of that date.

Fifth. That the Public Service Commission had never been in session, and no proceedings had been had by the Commission, with regard to the application of the Standard Pipe Line Company, Inc., for authority to put into effect the proposed tariff; and that relator, who was not connected with the pipe line company in any other capacity than as its attorney, had never been in the presence or hearing of the Commission or of the members thereof, in relation to the aforesaid application of the pipe line company, or for any other purpose during a period exceeding three months preceding the issuing of the aforesaid rules for contempt.

Sixth. That, inasmuch as the first rule for contempt, issued by the secretary of the Commission, was ultra vires, illegal, null and void, any message that might have been sent by relator to the Commission or to any member thereof, with reference to the first rule for contempt, could not, of itself, be contempt, either direct or constructive.

Seventh. That the Commission had no authority to inquire into any act committed out of the presence and hearing of the Commission and when the Commission was not in session.

The record filed by the Commission in this court, certified by the secretary to be a true and complete record of the proceedings had in this case, consists of the correspondence which we have set forth in this opinion, the proposed tariff on storage in transit of crude petroleum, the rules or orders served upon relator, the rule served upon the secretary of the pipe line company, and the subpœnas served upon two witnesses, to appear in New Orleans and testify in the case.

The record sustains relator's averment that no formal accusation was ever made against him, charging contempt or disrespect of the Commission. In fact the record, as far as it goes, sustains every allegation of fact on which relator asks for relief. There is no record that the Public Service Commission was ever in session on the application of the Standard Pipe Line Company, Inc., for authority to put into effect a tariff on storage in transit, or record that the Commission was ever in session on any question of contempt or disrespect on the part of the attorney or the secretary of the pipe line company. The rules for contempt were not issued or ordered to be issued by the Public Service Commission. They were issued by the secretary of the Commission, on no other authority than a telephone message from the chairman of the Commission, then in Shreveport. The record does not show that any

such case as "Standard Pipe Line Company, Inc., Ex parte. No. 292. In re Storage in Transit Rates and Rules," was pending, or had ever appeared on the docket or record of the proceedings of the Public Service Commission, until that title or heading appeared as the title or heading or caption for the rules to show cause why Messrs. Milling and Austermell should not be punished for contempt.

[5, 6] The chairman of the Public Service Commission was not authorized to order relator to appear before the Commission and show cause why he should not be punished for contempt. It required formal action on the part of the Commission itself, to institute proceedings to condemn and punish a person for an alleged constructive contempt; id est, for a supposed act of disrespect committed out of the presence and hearing of the members of the Commission and when they were not in session; and it required a formal charge or complaint, specifying the acts supposed to have been committed in contempt or disrespect of the Commission. 13 C. J. 64; 15 C. J. 797; 6 R. C. L. 531, 532; 10 L. R. A. (N. S.) 1098, note; 9 Cyc. 38: 2 A. L. R. 225, note; State ex rel. De Buys v. Judge, 32 La. Ann. 1259; State ex rel. Stewart v. Reid, 118 La. 827, 43 South. 455.

[7] The letter written by Mr. Milling to the Public Service Commission on the 15th of August, 1923, which brought on these contempt proceedings against him and the secretary of the pipe line company, was not contemptuous or disrespectful. It was an appropriate response to the letter which the author had received from the secretary of the Public Service Commission, and a respectful statement of the course which the pipe line company would pursue. The expression, "In view of the fact that the Commission has given no reason for its refusal to allow the storage in transit service, * * * we must regard its action as purely arbitrary and, as such,

unjust, unreasonable and illegal," was not offensive, under the circumstances. Such adjectives as arbitrary; unjust, unreasonable, and illegal, are of too frequent use—too familiar acquaintances to most of us—to seem at all disrespectful.

[8] Mr. Milling's statement that his client would offer to shippers the storage in transit service, and would perform the service if any shipper should apply for it and comply with the tariff, was not a valid cause for the Commission to order Mr. Milling to appear and show cause why he should not be punished for contempt. The Constitution prescribes the penalty for violation of the "orders or decisions" of the Public Service Commission. The penalty is a fine or forfeit to the state, not less than $100 or more than $5,000, to be fixed by the Commission, and to be recovered before a court of competent jurisdiction at the domicile of the Commission. Const. art. 6, § 6. It is not an act of contempt or defiance for a person to say in a respectful manner, even to a court of justice, that he intends to pursue a certain course which, in good faith, he believes he has the right to pursue, but which, if he be wrong, will subject him to a penalty prescribed by law. Columbia Fire Co. v. Purcell, 25 La. Ann. 283. The Public Service Commission had no right to substitute for or to add to the penalty prescribed by the Constitution for violation of any of the Commission's "orders or decisions" a condemnation and punishment for contempt.

[9] Our opinion is that the main purpose of investing the Public Service Commission with authority to punish people for contempt was to enable the Commission to enforce its authority to summon witnesses and compel their attendance, to compel the production of books and papers, and to take testimony under Commission. Whether that was the only purpose is a question which we are not now called upon to decide.

[10] The first paragraph of section 125 of the Revised Statutes is pertinent to both of the contempt proceedings against Mr. Milling, viz.:

"Nothing shall be construed or taken to be a contempt of court by an attorney, but what shall be said, done or committed directly in the presence or hearing of the court, during the sitting of the same; and which shall abuse, vituperate or insult any judge of the court, or any other person in or belonging to the court, or resist the authority or interrupt the proceedings thereof."

Article 131 of the Code of Practice, prescribing the penalty for contempt of court, was amended and re-enacted by Act 190 of 1894, p. 242, making this proviso, viz.:

"And provided that no publication out of court, respecting the conduct of such district courts or its officers, jurors, witnesses, or parties in any cause pending in [any] court, shall be construed to be contempt and punished as such: reserving to the parties aggrieved their remedies by prosecution for libel or action for damages."

By Act 21 of 1906, p. 32, the article was again amended and re-enacted so as to make the proviso apply to verbal utterances as well as to publications, and so as to make it applicable to the Supreme Court and the Courts of Appeal, as well as to the district courts, and so as to make it apply "after judgment" instead of to a "cause pending in court," viz.:

"And provided that no publication or utterance out of court, respecting the conduct of such courts or its officers, jurors, witnesses or parties in any cause after judgment shall be construed to be a contempt and punished as such; reserving to the parties aggrieved their remedies by prosecution for libel or action for damages."

Our conclusion is that the relator is entitled to the relief prayed for.

The orders or rules for contempt served upon the relator are annulled.

DAWKINS, OVERTON, ST. PAUL, and THOMPSON, JJ., dissent.

ST. PAUL, J. (dissenting). If I thought this court had jurisdiction I would concur with the majority in annulling the rule for contempt issued by the respondent; for I think the opinion correct upon the merits.

But I am convinced that the court had no jurisdiction; and for these reasons:

### I.

The Constitution provides that the Public Service Commission—

"may summon and compel the attendance of witnesses, * * * compel the production of books and papers, take testimony under commission, and punish for contempt as fully *as is provided by law for the district courts*." Const. of 1921, art. 6, § 4, p. 24. (Italics mine.)

It further provides that the Supreme Court—

"shall have control of, and general supervision over all inferior *courts*." Const. art. 7, § 10, p. 39. (Italics mine.)

Also, that the Supreme Court, Courts of Appeal, and district courts may—

"*in aid of their respective jurisdictions*, original, appellate, or supervisory, issue writs of mandamus, certiorari, prohibition, quo warranto, and all other needful writs, orders and process." Const. art. 7, § 2, p. 36. (Italics mine.)

### II.

Prior to the Constitution of 1879—

"the Supreme Court, from its earliest organization, had always disclaimed a supervisory control over the inferior courts in matters not incident to its appellate jurisdiction." 2 La. Digest, 470—citing Laverty v. Duplessis, 3 Mart. (O. S.) 42; La. Bank v. Hampton, 4 Mart. (O. S.) 298; State v. Watts, 8 La. 76, 80; Armfield v. Carlin, 11 La. 37; State v. Bermudez, 14 La. 478, 483; State v. Judge, 15 La. 521; State v. Judge, 11 Rob. 285; State v. Judge, 9 La. Ann. 250.

In Succession of Macarty, 2 La. Ann. 979 (affirmed in Ex parte Bujol, 3 La. Ann. 716), the court said:

"The Supreme Court has no general superintending jurisdiction over the inferior courts. The jurisdiction of the court in this respect is

the same under the present Constitution [1845] as under that of 1812."

So that when the court, as reorganized in 1880, assumed general supervisory control over all *inferior courts*, it was not because the court assumed the functions of self-constituted *parens patriæ*, but solely by virtue of the jurisdiction expressly conferred upon it by the Constitution of 1879, art. 90 (Const. 1898, art. 94), reading as follows:

Article 90: "The Supreme Court shall have control and general supervision over all inferior courts. They shall have power to issue writs of certiorari, prohibition, mandamus, quo warranto and other remedial writs."

## III.

This provision appears to have been taken from the Constitution of Michigan of 1850, art. 6, § 3; except that that state granted its Supreme Court power to issue, hear, and determine *original* writs, whilst our Constitution omitted any such grant of power; and the Constitution of 1921, as heretofore quoted, has made it even clearer that the power given to this court to issue remedial writs, is not granted as additional original jurisdiction, but simply *in aid of* the jurisdiction given elsewhere in the Constitution.

I quote the Michigan Constitution below, having specially in mind the case of Speed v. Detroit, 98 Mich. 360, 57 N. W. 406, 22 L. R. A. 843, 39 Am. St. Rep. 555, relied upon by the relator, viz.:

Const. of Michigan, 1850, art. 6, § 3:

"The Supreme Court shall have a general superintending control over all inferior courts, and shall have power to issue writs of error, habeas corpus, mandamus, quo warranto, procedendo, and other *original* and remedial writs, and to hear and determine the same. In *all other cases* it shall have appellate jurisdiction only." (Italics mine.)

## IV.

In State ex rel. Barbin v. Strong, Man. Unrep. Cas. 434, the writ of prohibition issued to the Secretary of State *in aid of* the court's appellate jurisdiction in a case then pending on appeal.

In State ex rel. Boyd v. Green, 34 La. Ann. 1027, a prohibition issued to a clerk of court, who had exceeded the authority granted him by law. But the Constitution (1879, art. 122) permitted the Legislature to grant certain judicial powers to clerks of court, and—

"Orders granted by a clerk, acting judicially, have the same effect as though made by the judge of the court, under like circumstances, and are reviewable in the same manner, and to the same extent." 34 La. Ann. 1028.

So that in that instance this court was simply exercising its supervisory power over *the court* as it clearly had a right to do.

In Speed v. Detroit, supra, where the Supreme Court of Michigan issued a writ of prohibition to a city council, it has already been shown that that court had jurisdiction to issue, hear, and determine original writs.

The other cases from other jurisdictions, cited by relator, show that in each instance the writ issued out of some court of original jurisdiction, and specially authorized by statute to issue original writs of prohibition. Incidentally it may be remarked that the Supreme Court of New York is a court of first instance, and not the court of last resort of the state of New York.

Be all that as it may, we are not concerned with the practice and jurisdiction of courts outside of this state. Suffice it to say that I do not pretend that administrative boards which exceed their powers cannot be restrained by the courts of this state, as has been repeatedly done, and it is immaterial for practical purposes whether the means of restraining be termed *prohibition* or *injunction*; the only question with which we are presently concerned being whether such *prohibition, injunction* or other process should issue out of *this* court or out of some court of original jurisdiction.

### V.

But it is clear that this court would simply be usurping power, should it undertake to issue writs except *in aid of* some jurisdiction granted it by the Constitution. And it is equally clear that this court has no *direct* supervisory control over Public Service Commissions, unless that body be an *inferior court* within the meaning of the Constitution,

For the Constitution, after providing in *article 6* for the establishment of the Public Service Commission, provides in *article 7* that the *judicial power* shall be vested in a Supreme Court, in Courts of Appeal, in district courts, and in such *other courts* as are *hereinafter* provided. Clearly therefore the Constitution does not contemplate that any Commission or body *hereinbefore* provided for should be a *court* or be vested with any part of the judicial power.

And it is apparent that the powers granted to the Public Service Commission are in their nature rather *legislative* than judicial. In Vicksburg, S. & P. Ry. Co. v. Railroad Commission, 153 La. 983, 96 South. 832, this court held that the regulation of railroad traffic was a legislative, or quasi legislative, function, citing Atchison, Top. & S. F. Ry. Co. v. Denver, 110 U. S. 681, 682, 4 Sup. Ct. 185, 28 L. Ed. 291.

So that the Public Service Commission cannot by any stretch of the imagination be called an *inferior court*. And if it is not an inferior court this court has no direct supervisory power over it.

### VI.

It is suggested that since the Public Service Commission is granted power to summon witnesses, take testimony, and punish for contempt "as fully, as is provided by law for the district courts," therefore it cannot quoad its power to punish for contempt be subjected to supervision of a district court, since one district court can have no supervisory jurisdiction over another.

This is manifest non sequitur and fallacy. Pretermitting the question of the extent of the power thus granted to punish for contempt, yet it is perfectly clear that whether in a given case the Commission has exceeded that authority presents a *justiciable issue*; and if it presents such an issue then that issue necessarily comes within the *judicial power* of the state. But if the issue come within the judicial power of the state, there is necessarily some court of the state having jurisdiction to try it. And if that jurisdiction does not properly belong to an appellate court, it follows that it must necessarily belong to some court of first instance.

The expression that the power conferred is the same "as is provided by law for the district courts," means nothing more than that to determine the extent of that power we must look to the laws regulating the same powers when conferred on district courts. But it does not mean that the Commission is therefore superior to any process issued out of a district court, for reasons which we have already given.

Nor will it do to say that because one district court has no jurisdiction over another therefore no district court can have jurisdiction over the Commission. For the reasons why one district court has no jurisdiction over another are these: That both are courts of equal jurisdiction and if one has jurisdiction over the other, then that latter has also jurisdiction over the former; and the process of the one necessarily nullifies the process of the other; and again because the *territorial* jurisdiction of the one does not extend over the other.

But with the Commission it is different; it is put by the Constitution under the jurisdiction of the courts, the same as any other board or commission.

The whole argument therefore falls of its own weight, which suggests that if this court has not direct supervisory jurisdiction over the Commission, then the Commission is

above all the courts and may proceed as it pleases without interference whatever from the courts.

I am clearly of opinion that this court is without jurisdiction herein and that relator should apply to the district court for relief.

I therefore dissent.

DAWKINS, OVERTON, and THOMPSON, JJ., concur.