HARRY CHASIS, PLAINTIFF-RESPONDENT, v. JAMES A. TUMULTY, CITY CLERK OF THE CITY OF JERSEY CITY, DEFENDANT-APPELLANT.

Argued October 22, 1951—Decided November 12, 1951.

148

*Mr. Richard J. Congleton* argued the cause for respondent (*Mr. Harold H. Fisher* on the brief; *Messrs. Shanley, Congleton & Fisher*, attorneys).

*Mr. Mortimer Neuman* argued the cause for appellant (*Mr. John B. Graf*, attorney).

The opinion of the court was delivered by

CASE, J. The appeal, brought here on our own motion following leave to appeal given by the Appellate Division, is from an order of the Superior Court, Law Division, Hudson County, denying defendant's motion to dismiss the complaint.

The proceeding is in lieu of the prerogative writ of *mandamus* and seeks to compel the city clerk of the City of Jersey City to provide for a special election under the Optional

Municipal Charter Law, *L.* 1950, *c.* 210 (*N. J. S. A.* 40:69A–1, *et seq.*), following the filing of a petition to that end. A second count in the complaint, asking for a declaratory judgment, has been abandoned.

Article 1 of the statute contains three parts classified respectively as "A," "B" and "C." Part "A," containing paragraphs 1–1 to 1–17 inclusive, is entitled "Charter Commission"; part "B," containing paragraphs 1–18 to 1–21 inclusive, is entitled "Procedure by Petition and Referendum." Under part "A" provision is made for submitting to the voters the question whether or not a commission shall be elected to study the charter of a municipality and to consider a new charter or improvements in the existing charter and to make recommendations thereon; and authority is given such a commission, if the popular vote adopts that scheme of inquiry, to make one of four enumerated recommendations, namely: (a) that a referendum election be held to submit the question of the adoption of one of the optional forms of government described in the statute; (b) that the governing body petition the Legislature for the enactment of a special charter or for one or more specific amendments of or to the existing charter of the municipality; (c) that the existing form of government remain unchanged, or (d) that such other action be taken as the commission, consistently with its functions, may deem advisable. If the report recommends the adoption of one of the optional forms of government a referendum election is to be called; if it recommends a special charter or specific amendment of the existing charter, the governing body is enjoined to petition the Legislature accordingly; but if it recommends that the form of government remain unchanged, no further action appears to be required. The proposal to initiate and to evoke a referendum election concerning a commission for study and report may arise in either of two ways: (1) by resolution of the governing body, or (2) by petition of the registered voters in sufficient numbers; but when that course is proposed by either method it becomes the duty of the municipal clerk, subject to the re-

striction hereinafter mentioned, to provide for submitting the question to popular vote.

The procedure by petition and referendum contained in part "B" originates solely with the voters who, signing in sufficient numbers and without the intervention of a charter commission, may petition for an election on the question of adopting any one of the optional plans of government provided in "articles 3 through 16" of the statute. Upon the filing of such a petition it becomes the duty of the municipal clerk, here again subject to a limitation presently to be mentioned, to provide for submitting the question at an election.

About January 4, 1951, according to the allegations of the complaint, a movement was inaugurated in the City of Jersey City which resulted in the filing with the municipal clerk, on January 22, 1951, of a petition under part "B" containing more than 23,000 signatures of registered voters (of whom plaintiff was one), admittedly a sufficient number, seeking an election on the question of adopting one of the statutory optional forms of municipal government. The clerk did not call an election, justifying that omission, as the complaint alleges, upon the fact that the city commission, on January 9, 1951, passed a resolution pursuant to section 1–1 of part "A" calling for a referendum on the question of electing a charter commission and, further, on January 23, 1951, passed an ordinance to the same effect. Thus is presented for construction section 1–21 of part "B," which contains the restrictions upon the authority and the duty of the clerk to call an election under that part. The section reads:

"1–21. No petition for submission of the question of adopting an optional plan of government pursuant to this act may be filed while proceedings are pending pursuant to an ordinance passed or petition filed pursuant to this act or other statute for the adoption of any other charter or form of government available to the municipality, nor within four years after an election shall have been held pursuant to any such petition filed pursuant to this act."

Related thereto is section 1–17, the final section in part "A," which provides with respect to a proceeding under that part:

"1–17. No resolution or petition for the election of a charter commission may be filed while proceedings are pending under any other petition or resolution pursuant to this act, or pursuant to any other statute for the adoption of any other charter or form of government available to the municipality, nor within four years after an election shall have been held pursuant to any such resolution or petition."

Except for purposes of comparative study, section 1–21 is controlling because the clerk's refusal is based on it and the argument is that the resolution of January 9 and the ordinance of January 23, either together or separately, are sufficient under that section to stop procedure on plaintiff's group petition. Manifestly, the ordinance may not have that authority because it was not passed until after the petition was filed. The contention that an ordinance is "passed" within the meaning of the statute when it has passed first reading or when it has passed second reading lacks substance. The language used in the statute plainly refers to an ordinance that has become effective through final passage.

It is further contended that the word "ordinance" used in section 1–21 has the same meaning as has "resolution" used in section 1–17; that the words are interchangeable; that section 1–21 should be construed as though the word was "resolution" instead of "ordinance" and that therefore the resolution of January 9 was a barrier against an election. While in some instances the term "resolution" has been held to be loosely the equivalent of the term "ordinance," the two words, technically used, have a clear distinction. All through our cases dealing with municipal action, proceeding by resolution and proceeding by ordinance are alternative methods; an action by the governing body which does not rise to the dignity of an ordinance is a resolution. *Irvington v. Ollemar,* 128 *N. J. Eq.* 402 (*Ch.* 1940), affirmed *sub. nom. Irvington National Bank v. Geiger,* 131 *N. J. Eq.* 189 (*E. & A.* 1941). It has long been settled that when the law requires a proceeding to be instituted by an ordinance it cannot be effected by resolution merely; the latter, wanting the solemnities of the former, is not regarded as a legal equiva-

lent. *City of Paterson v. Barnet,* 46 *N. J. L.* 62 (*Sup. Ct.* 1884). Other illustrative cases are *Sleiker v. Borough of East Paterson,* 137 *N. J. L.* 653 (*E. & A.* 1948), and *Fraser v. Township of Teaneck,* 1 *N. J.* 503 (1949). The distinction between an ordinance and a resolution in our Municipalities Act is clearly drawn. It defines the two terms as follows:

"40:49-1. 'Ordinance' and 'resolution' defined

The term 'ordinance' when used in this subtitle means and includes any act or regulation of the governing body of any municipality required to be reduced to writing and read at more than one meeting thereof and published.

The term 'resolution' when used in this subtitle means and includes any act or regulation of the governing body of any municipality required to be reduced to writing, but which may be finally passed at the meeting at which it is introduced."

Those definitions are for the purposes of the statute in which they are found. But the present statute is also entitled, in part, "An Act concerning municipalities \* \* \*." Certainly an ordinance, in the accepted and ordinary use of that word, does not become such until it has been formally and finally passed. We are not at liberty to assume that with this clear distinction in our cases and in our statutes the Legislature would place the two words in close conjunction with an identical meaning.

 Section 1–21 is, by its terms, comprehensive not only of an ordinance passed under this statute but of an ordinance passed under any statute. It is conceivable that an ordinance might be required if a charter commission should, under paragraph (b) of its authority, recommend that the governing body petition the Legislature for a special charter and possibly also if a commission should make a recommendation under paragraph (d); and if that should transpire such an ordinance might well be considered as passed, using the terminology of the statute, for the adoption of another charter or form of government. It is likewise conceivable that a governing body would have occasion to pass an ordinance under such

a statute, *L.* 1948, *c.* 199, *N. J. S. A.* 1 :6–10, *el seq.,* in petitioning the Legislature for the passage of a private, special or local law regulating the internal affairs of the municipality. Thus we have a field of potential action which makes the statutory language logical and significant. It is a cardinal rule of construction that statutes shall be so construed that if possible full force and effect shall be given to every sentence, clause and word thereof. *Bogert v. Hackensack Water Company,* 101 *N. J. L.* 518 (*E. & A.* 1925).

■ It is also to be said that a proceeding looking toward the creation of a charter commission, which is the subject matter of part "A," is not a proceeding for the adoption of another charter or form of government, which is the controlling factor in section 1–21 of part "B." A proceeding for the creation of a charter commission may ultimately but does not necessarily lead to a proposal for a change in the charter. The city's action, by whatever name called, has not come to that phase. It could be that a governing body, wishing to maintain the existing status and observing a popular effort making toward a new charter, would endeavor to stifle that movement by the hurried passage of a resolution for charter study which might lead somewhere or nowhere. It is plainly an objective of the statute that a ready response shall be made to a popular impulse for change. The wisdom of that fluid condition of municipal government is for the Legislature to determine. The Legislature has determined; and while it has clothed the governing body with authority to initiate a movement looking toward an applied study it has, in our opinion, given, in section 1–21, assurance that such authority shall not vitiate a popular movement toward a referendum election on a specific statutory charter.

■ It is argued further that *L.* 1950, *c.* 212, a companion statute to chapter 210, providing in its section 2 that notwithstanding the provisions of any other general or special law no petition for submission of the question of adopting a new or different municipal charter or form of government may be filed and no referendum election be held while other proceed-

ings are pending pursuant to any law or referendum act for the adoption of a municipal charter or part thereof or for incorporation thereunder, should be so construed as to place a further restraint upon such a procedure as we have been discussing under chapter 210. Chapter 212 is by its title an amendment to section 40:45–2 of the Revised Statutes, which is an act relating to elections, and a supplement to chapter 43 of Title 40 of the Revised Statutes, which relates to incorporation, annexation, consolidation and boundaries of municipalities. Its function is to coordinate chapter 210, and perhaps chapter 211, with our remaining statutory law. It does not, in our opinion, place any new or different restraint upon proceedings under chapter 210.

Appellant's argument is embraced in three points, of which the first is that *L.* 1950, *chapter*s 210, 211 and 212, by their history and general scheme, point to the correctness of appellant's contentions; the second, that the court below erred in denying defendant appellant's motion to dismiss the complaint for failure to state a claim; and the third, that the complaint is defective because of nonjoinder of indispensable parties plaintiff. We have dealt sufficiently with these several contentions except the last. The issue under the first count of the complaint is directed toward the clerk, solely, for the reason that it is his duty, without recourse to the governing body, to prepare for the referendum election upon the filing of a petition in accordance with section 1–21 of part "B" of the statute. If the city government had wished to be heard, it could have sought entry to the suit as a party. *Rule* 3:21. Any bearing of the point upon the second count has become moot because of the abandonment of that count. Defendant professes not to know how to proceed with an election. The general election law, especially *R. S.* 19:27–12, along with the directions in the statute under review, gives sufficient guidance.

We conclude that the motion to dismiss the complaint was properly denied.

The judgment below will be affirmed, with costs.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, WACHENFELD, BURLING and ACKERSON—6.

*For reversal*—None.