268 So.2d 629

The JOINT LEGISLATIVE COMMITTEE OF the LEGISLATURE of the State of Louisiana Created By Senate Concurrent Resolution No. 31 As Amended By Senate Concurrent Resolution No. 76 of the Louisiana Legislature of 1970

v.

James R. STRAIN.

Nos. 51567, 51605.

May 1, 1972.

Rehearing Denied June 5, 1972 in No. 51567.

On Rehearing Nov. 6, 1972 in No. 51605.

Pugh & Nelson, Robert G. Pugh, Shreveport, for defendant-applicant.

Sanders, Miller, Downing & Kean, R. Gordon Kean, Jr., John V. Parker, Baton Rouge, for plaintiff-respondent.

SUMMERS, Justice.

By Senate Concurrent Resolution No. 31, as amended by Senate Concurrent Resolution No. 76, a Joint Legislative Committee was established to investigate organized crime in Louisiana as it relates to state and local government officials. The resolution charges the committee to "undertake an immediate comprehensive in-depth investigation, inquiry and hearings into all matters relating to the question of corrupt and/or criminal influences on the government of this state and/or its political subdivisions and the officials and employees of either."

The resolution invested the committee with "the power and authority to hold public hearings, subpoena witnesses, administer oaths, compel the production of books, documents, and records, . . . ." Further, the resolution set forth,

. . . that failure to comply with any order of the committee issued in accordance with or under authority of this Resolution, refusal to testify, or any act of disrespect of or disorderly or contemptuous behavior before the committee shall constitute contempt of the committee and the committee, through its counsel, shall have the power and authority to institute proceedings in any court of competent jurisdiction for the punishment thereof in accordance with the penalties fixed by Article III, Section II (sic) [1] of the Louisiana Constitution and, . . . that in addition to the power and authority of the committee to punish for contempt as provided in Article III, Section II (sic) of the Constitution, the committee also shall have the power and authority to invoke the provisions of R.S. 24:4 through R.S. 24:6 [2] in order to subject

1. The reference to Article III, Section 2, of the constitution is without doubt a misprint. That section pertains to apportionment of the legislature; whereas, Section 11 of that same article was obviously intended, for it provides:

"Either house, during the session, may punish by imprisonment any person not a member who shall have been guilty of disrespect, or disorderly or contemptuous behavior; but such imprisonment shall not exceed ten days for each offense."

2. La.R.S. 24:4 provides:

"A. Whenever the legislature or either house of the legislature, or whenever any committee of either house or any joint committee of both houses or any sub-committee of any such committee, which committee, joint committee or

sub-committee has been specifically and expressly granted the subpoena power, has summoned any person as a witness to give testimony or to produce papers or other evidence upon any matter under inquiry before such house, committee, joint committee or sub-committee, such person shall be guilty of contempt of the legislature if he or she

"(1) willfully defaults by failing to appear or to produce papers or other evidence, as ordered, or

"(2) having appeared, refuses to take the oath or affirmation of a witness, or

"(3) having appeared, refuses to answer any question pertinent to the question under inquiry.

"B. Whoever is found guilty of contempt of the legislature under the pro-

persons guilty of contempt of the committee to the penalties provided for therein.

The committee was required by the resolution to submit its final report and recommendations to the legislature and the Governor not later than thirty days prior to the day on which the 1971 legislature convened in regular session.

During the month of May 1970 the committee began its investigations, holding a series of hearings at which many witnesses testified. At these hearings defendant Strain, an elected Representative to the legislature from Caddo Parish, testified before the committee relative to an alleged attempt to unlawfully influence his vote during the 1970 session of the legislature.

Subsequently, Strain made public statements that he possessed evidence, including tape recordings, relating to attempts to unlawfully influence his vote in the legislature not previously presented to the committee. Accordingly, on January 28, 1971, the committee issued a subpoena directed to Representative Strain ordering his appearance before the committee at a hearing to be held on February 4, 1971 in Baton Rouge and ordering him to bring with him certain tape recordings and transcripts or excerpts thereof.

Strain did not appear and did not produce the documents, papers or recordings called for. Whereupon the committee instituted this proceeding in the Nineteenth Judicial District Court in East Baton Rouge Parish.

visions of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months, or both.

"C. The provisions of R.S. 24:4 through R.S. 24:6 are hereby declared to be supplemental to the powers of the legislature and of the senate and of the house of representatives to punish for contempt, and the legislature hereby reserves to itself and to the senate and to the house of representatives all inherent and all constitutional powers to punish for contempt."

La.R.S. 24:5 provides:

"Whenever a statement of facts alleged to constitute contempt under R.S. 24:4 is reported to either house of the legislature while the legislature is in session, or whenever, while the legislature is not in session, such statement is reported to and filed with the president of the senate or the speaker of the house of representatives, said president or speak-

er, as the case may be, shall certify the statement to the district attorney of a district where venue lies, as provided in the general laws governing venue or as provided by R.S. 24:6 in the case of offenses defined in R.S. 24:4(A), and the district attorney shall institute and prosecute a criminal proceeding against the accused for contempt of the legislature under the provisions of R.S. 24:4."

La.R.S. 24:6 provides:

"Any other provisions of law to the contrary notwithstanding, any offense defined by the provisions of R.S. 24:4 (A) shall be deemed to have been committed (1) in the parish where the subpoena issued, (2) in the parish where the offender was served with the subpoena or (3) in the parish where the subpoena ordered the offender to give testimony or to produce papers or other evidence, and the trial of the offender for such offense may take place in any of such parishes."

It is a rule to show cause why Strain should not be adjudged guilty of contempt of the committee and the legislature. The committee is represented in these proceedings by its counsel.

Strain filed a number of exceptions, all of which were overruled. The trial judge then held Strain in contempt of the committee and the legislature, sentencing him to jail for ten days, execution of the sentence to await further orders of the Court.

An appeal to the First Circuit was dismissed. The court reasoned it had no appellate jurisdiction in the matter. La.App., 248 So.2d 105. Strain applied for certiorari to review the judgment of the Court of Appeal and made separate application to review the judgment of contempt rendered by the trial court. Both applications are granted.

I.

A holding that the Court of Appeal has appellate jurisdiction would ordinarily result in a remand to that court to consider the case on appeal. We will therefore first consider the correctness of the First Circuit's finding that it had no appellate jurisdiction in this contempt proceeding.

The contention that the Court of Appeal has appellate jurisdiction is based upon the argument that Article VII, Section 29, of the Louisiana Constitution grants to courts of appeal appellate jurisdiction over "all civil and probate matters of which . . . .

the district courts throughout the state have exclusive original jurisdiction."

The fault of this argument lies in its assumption that this contempt proceeding is "civil" within the contemplation of Article VII, Section 29, of the Constitution. Punishment for this offense under Article III, Section 11, of the Constitution is by imprisonment, not to exceed ten days. Under Section 4 of Title 24 of the Revised Statutes contempt of the legislature is punishable by a fine and by imprisonment of not more than six months. Since the refusal to appear in answer to the subpoena is not a direct contempt of the committee it is a constructive contempt. Cf. La.Code Crim.Proc. art. 24. Like criminal contempt of court, it is properly triable by a rule to show cause alleging the facts constituting the contempt. Cf. La.Code Crim. Proc. art. 24. Trial for contempt is a summary proceeding before the judge alone. La.Const. art. 1 § 9; art. 7 § 41; La.Code Crim.Proc. art. 24. These provisions relating to contempt of court do not in terms apply to tribunals other than courts. However, although the legislature is not a court, the procedure prescribed for contempt of court may be utilized for contempt of the legislature when it does not contravene express statutory or constitutional provisions. State ex rel. Milling v. Louisiana Public Service Commission, 154 La. 752, 98 So. 175 (1923). Thus the legislature prescribed, by adoption of the concurrent resolution,

that "the Committee, through its counsel, shall have the power and authority to institute proceedings in any court of competent jurisdiction for the punishment thereof in accordance with the penalties fixed by Article III, Section II (sic 11) of the Louisiana Constitution." In so doing the legislature determined to submit all such contempts of this committee to the judiciary for trial and punishment. These contempt proceedings are therefore properly triable by the courts under the procedure adopted here. Section 5 of Title 24 of the Revised Statutes specifically provides that when contempt of the legislature occurs "the district attorney shall institute and prosecute a *criminal proceeding* against the *accused.*"

As we pointed out in Louisiana State Board of Medical Examiners v. Bates, 258 La. 1049, 249 So.2d 127 (1971), the similarity between criminal contempt and civil contempt is striking. We recognized there, despite the similarity between civil and criminal contempt, that criminal contempt is a crime in the ordinary sense; it is a violation of law, a public wrong which is punishable by fine and imprisonment or both. In the words of MR. JUSTICE HOLMES: "If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech."

■ Among other distinctions, criminal contempt differs from civil contempt in

that criminal contempt involves a fixed punishment for the transgression, while civil contempt is merely a means of compelling compliance with lawful orders of the court. Louisiana State Board of Medical Examiners v. Bates, ibid.

In the federal system contempt of Congress is treated as a crime. By statute, when a person is summoned to appear before a congressional committee or to produce documents and fails to do so, and the failure is reported to either house in the form of a statement of fact, the presiding officer certifies the statement to the United States attorney, who brings the matter before the grand jury. From there, assuming a true bill is returned, it is handled like other true bills. 2 U.S.C. § 194.

The strong implication, the almost implicit inference, to be gained is that contempt is a criminal matter.

■ Aside from our finding that this contempt proceeding is criminal, or at least criminal in nature, and, therefore, not appealable to the courts of appeal, for it is not a "civil" matter of which the district courts have original jurisdiction, La.Const. art. 7 § 29, the rule has been well-founded in our jurisprudence that a conviction and sentence of contempt are not appealable in the absence of a constitutional or statutory provision for review. Hattier v. Martinez, 197 La. 121, 1 So.2d 51 (1941); State ex rel. Milling v. Louisiana Public Service Com-

mission, 154 La. 752, 98 So. 175 (1923); City of Gretna v. Rossner, 154 La. 117, 97 So. 335 (1923); State ex rel. Dowling v. Ray, 150 La. 1030, 91 So. 443 (1922) and State ex rel. Farmer v. Judge Parish Court of Ouachita, 31 La.Ann. 116 (1879); Pearce v. Dozier, 181 So.2d 432 (La.App.1965). No statutory or constitutional provision for review of this contempt proceeding having been pointed out, and none having been discovered in our research, this contempt proceeding was not appealable and the Court of Appeal properly dismissed the appeal. 248 So.2d 105.

## II.

Having concluded that the Court of Appeal has no jurisdiction, the merits of the trial court judgment must be reviewed under our supervisory jurisdiction.

▆ Representative Strain filed an exception to the venue of the trial court, alleging that the contempt rule was improperly brought in East Baton Rouge, for he was a resident and domiciliary of Caddo Parish. To support this contention he relies upon the general rule of venue prescribed in Article 42 of the Code of Civil Procedure that an action against "an individual who is domiciled in the state shall be brought in the parish of his domicile."

Section 6 of Title 24 of the Revised Statutes designates the venue for the trial of contempt of the legislature and provides that failure to appear or to produce papers or other evidence "shall be deemed to have been committed (1) in the parish where the subpoena issued, (2) in the parish where the offender was served with the subpoena or (3) in the parish where the subpoena ordered the offender to give testimony or to produce papers or other evidence."

Representative Strain was served in Caddo Parish with a subpoena issued in East Baton Rouge Parish ordering him to appear in East Baton Rouge Parish to give testimony before the committee there. The rule for contempt was therefore properly tried in East Baton Rouge Parish under (1) and (2) of Section 6 of Title 24 of the Revised Statutes as an exception to the general rule of venue announced in Article 42 of the Code of Civil Procedure.

It is contended, however, that Section 6 of Title 24 of the Revised Statutes may not serve as authority for venue in this contempt proceeding, for the facts constituting the contempt were not certified to the district attorney as Section 5 of Title 24 requires. See footnote 2, supra.

The certification procedure for prosecution of contempt proceedings prescribed by Section 5 of Title 24 is not exclusive. It is an available procedure but not a sacramental one. Other procedure is prescribed for the trial of constructive contempt by Article 24 of the Code of Criminal Procedure. This latter procedure providing for a rule to show cause was followed here.

Moreover, having decided that this contempt proceeding was criminal in nature, the venue under Article 611 of the Code of Criminal Procedure is "in the parish where the offense has been committed." In this instance the appearance was ordered in East Baton Rouge Parish and it was not complied with. East Baton Rouge Parish is therefore the proper venue under Article 611. This article is authority for the prosecution in East Baton Rouge Parish.

Assuming that the certification to the district attorney prescribed by Section 5 was not complied with, the prosecution is authorized under Articles 24 and 611 of the Code of Criminal Procedure and the provision of the resolution that "the Committee, through its counsel, shall have the power and authority to institute proceedings in any court of competent jurisdiction for the punishment" of those in contempt of the committee.

### III.

It is asserted that the resolution authorized the institution of contempt proceedings under Article III, Section 11, of the constitution which applies to persons "not a member" of the legislature. Therefore, since Representative Strain is a member of the legislature, the authorization cannot apply to him. Instead, it is argued, the constitutional provision applicable to members of the legislature is Section 10 of Article III which authorizes "each house"

to "punish its members for disorderly conduct and contempt." Then, without citing authority to support his position, Strain argues that it can hardly be said that the legislature intended to delegate to the committee (seven of its members—three from the Senate and four from the House) the power to imprison members.

Not only does the resolution manifest the clear intention of the legislature to delegate this authority to the committee, we see no reason why it may not do so. To the contrary, it appears to be the most feasible manner of carrying out the objects and purposes of the resolution.

■ Although the resolution authorized institution of contempt proceeding against persons "not a member" of the legislature in accordance with Article III, Section 11, of the Constitution, the resolution also authorized the committee to invoke the provisions of Section 4 of Title 24 of the Revised Statutes. That section permits contempt proceedings against "any person" and Article III, Section 10, of the Constitution permits the legislature to punish "its members" for contempt. Hence the committee's authority to punish for contempt extends to both members and nonmembers alike.

■ Nor is it a violation of the principle of separation of powers expressed in Article II, Section 1, of the Constitution for the legislature to authorize the trial of

contempt of the legislature in the courts of law. This is not a delegation of legislative power. It is more properly a provision for asserting legislative power by imposing the implementing authority upon the judiciary. It is no more an improper delegation of legislative power than it is to require by legislation the trial in the courts of crimes against the State.

## IV.

Representative Strain's brief asserts that the minutes of the committee proceedings fail to reveal that the committee voted to institute this contempt prosecution and, therefore, the entire proceeding is unauthorized and invalid. The committee's brief replies that the record of the meeting of the committee held on February 4, 1971 clearly reflects that a motion to institute contempt proceedings was made, seconded and adopted unanimously.

The record before us does not contain a copy of the committee minutes. There is, therefore, no evidence to support Strain's contention, and we must find it unsupported by the record.

## V.

In a motion for summary judgment Representative Strain alleges that on the date (February 4, 1971) when he was ordered to appear before the committee in the city of Baton Rouge, he, as chairman, was conducting a hearing of the Statewide Health Service Committee, a committee established by House Concurrent Resolution No. 95 of the Extraordinary Session of 1968. For this reason, he argues, he could not be punished for contempt. Without citing authority for his position, he contends that members of the legislature are exempt, that is, not subject to the power of subpoena or any other judicial process, during terms of the legislature or while in attendance at duly constituted legislative committee hearings.

While Section 1 of Title 24 of the Revised Statutes stays civil proceedings against members of the legislature "during their attendance at the sessions of their respective houses," it grants no such exemption from subpoena or attendance at a duly constituted legislative committee hearing.

## IV.

Representative Strain contends that the committee was without a cause of action in this prosecution, for the resolution establishing the committee is broader than its title. In this respect therefore the argument is that the resolution violates the constitutional requirement that "Every statute enacted by the Legislature shall embrace but one object, and shall have a title indicative of its object." La.Const. art. 3 § 16.

The title of the resolution sets forth that the resolution is adopted "To establish a

Joint Legislative Committee to investigate organized crime in Louisiana as it relates to state and local government officials . . . . ", whereas the body of the act authorizes the committee to undertake an investigation into "corrupt and/or criminal influences on the government . . . or its officials." Strain's argument, as we understand it, is that he was subpoenaed to appear before the committee to testify concerning his public statements that improper influence was sought to be applied by certain persons to affect his vote on legislation. Therefore, this conduct, authorized to be investigated by the body of the resolution is broader than the title which only refers to investigation of organized crime.

This contention is without merit. Article V, Section 17, of the Constitution specifically declares that resolutions of the legislature "may. empower legislative committees to administer oaths, to send for persons and papers, and generally make legislative investigations effective." We know of no requirement that resolutions under this authority must adhere to the Title Body Clause of the Constitution. The Title Body Clause deals with "every statute" and a concurrent resolution does not fall within the meaning of that constitutional provision. Notwithstanding this conclusion, we are of the opinion that authority to investigate "organized crime" is broad enough to include corrupt influenc-

ing of government officials—a crime. La. R.S. 14:120. The sole question is who is exerting the improper influence. It was proper for the committee to investigate to determine whether the improper influence was being exerted by "organized crime."

### VII.

The contention is made that the committee mistakenly relied upon reports of the news media as a basis for committee inquiry into the public statements of Representative Strain, without making an independent investigation to determine whether the facts warranted the issuance of the subpoena. This procedure, it is claimed, has a chilling effect upon Strain's freedom of expression guaranteed to citizens by the First Amendment to the United States Constitution. Reliance is placed upon the holding in Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), to support this position.

In effect, the argument proceeds, the action of the committee places all persons on notice that they are subject to repeated subpoenas to testify and appear and prove all charges they make against public officials. In substance, it is asserted the procedure has the effect of suppressing criticism of public officials, and, when applied to an elected official, the procedure hinders the performance of his "constitutional duty" to call to the public's attention all information in his possession relating to improper conduct of public officials.

The Dombrowski Case is not authority for Strain's position.[3] There a statute imposed criminal penalties for subversive activities. Plaintiffs, having been indicted under the statute, sought, in federal court, a judgment declaring the broad sweep of the statute to be unconstitutional. An injunction was also prayed for to prevent its enforcement. It was alleged there that failure to enjoin the prosecution would result in a substantial loss or impairment of freedom of expression if Dombrowski and the others threatened with prosecution must await the state court's disposition and ultimate review by the United States Supreme Court of any adverse determination. In remanding the case to the trial court, the United States Supreme Court declared that the statute making it a felony to participate in the formation or management or to contribute to the support of "any subversive organization," as defined in the statute, was invalid on the ground of vagueness.

 Clearly this holding has no bearing upon Strain's refusal to obey the committee subpoena. We fail to see how an order to testify before the committee concerning statements Strain made publicly imputing improper influences to government officials is an impairment of freedom of expression. This subpoena was not the result of an indiscriminate dragnet procedure. Strain, by his public statements, furnished probable cause for the committee to believe that he possessed information which was pertinent to the purposes of the investigation for which the committee was created.

Often those who are possessed of the most vital information relating to investigations preliminary to legislation are not always willing to testify. For this reason, most states, including Louisiana, have enacted statutes investing legislative committees with subpoena and contempt powers. These statutes are necessary to effectuate the investigative power and they are within expressed constitutional authority. La.Const. art. 5 § 17; La.R.S. 24:2–6.

 It is unquestionably the duty of citizens, especially public officials, to cooperate in a legislative investigation into organized crime and improper influencing of government officials. In fulfilling this duty it is their unremitting obligation to respond to subpoenas, to promote, uphold and respect the dignity of the legislature and its committees and to testify fully with respect to matters within the province of proper investigation. This, of course, assumes that the constitutional rights of witnesses will be respected by the legislature as they are in courts of justice. Witnesses cannot be compelled to give evidence

**3.** Maraist, Federal Injunctive Relief Against State Court Proceedings: The Significance of Dombrowski, 48 Tex.L. Rev. 535 (1970).

against themselves. They cannot be subjected to unreasonable search and seizure, nor can First Amendment freedoms of speech be abridged. Cf. Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed.2d 1273 (1957).

For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is affirmed, and the judgment of the Nineteenth Judicial District Court holding Representative Strain in contempt of the Committee is likewise affirmed.

SANDERS, J., dissents in part and concurs in part with written reasons.

BARHAM, J., dissents.

TATE, J., dissents and assigns written reasons.

DIXON, J., dissents in part and concurs in part with reasons.

SANDERS, Justice (concurring in part and dissenting in part).

In my opinion, this case is appealable to the Court of Appeal and, under established procedure, should be remanded to that court for appellate review.

We have long recognized that the right of appeal is an important safeguard in the administration of justice. Appeals are favored by the courts. The dismissal of an appeal should be ordered only for a clear and substantial cause. Kirkeby-Natus Corporation v. Campbell, 250 La. 868, 199 So. 2d 904 (1967); Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963); Wischer v. Madison Realty Company, 242 La. 334, 136 So.2d 62 (1961); Hood, The Right of Appeal, 29 La.L.Rev. 498 (1969).

In Kirkeby-Natus Corporation v. Campbell, supra, we stated:

"On many occasions in our jurisprudence we have declared that appeals are favored by the courts; that they should be dismissed only for substantial causes; and that unless the grounds urged for dismissal are free from doubt appeals will be maintained."

Article 2083 of the Louisiana Code of Civil Procedure provides:

"An appeal may be taken from a final judgment rendered in causes in which appeals are given by law whether rendered after hearing or by default, and from an interlocutory judgment which may cause irreparable injury."

Since the contempt adjudication in the present action is a final judgment, it is appealable as a matter of right unless the law elsewhere excludes such appeals. See Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971); Succession of Damico, 161 La. 725, 109 So. 402 (1925).

Article 7, Section 10 of the Louisiana Constitution gives the Supreme Court appellate jurisdiction in "criminal cases." Article 7, Section 29 gives the Courts of Appeal jurisdiction in "all civil matters . . . of which the district courts throughout the state have exclusive original jurisdiction." Hence, *for appellate jurisdiction*, the case must be classified as either a criminal case or a civil matter.

In my opinion, it is not a criminal case, because Section 10 governing the jurisdiction of the Supreme Court refers to convictions for statutory crimes.

Although it has unique features, a contempt adjudication of this kind should be classified as civil for appellate purposes. The Court of Appeal in the present case so classified it, but found that the district court's jurisdiction was non-exclusive. The Court of Appeal apparently held that the Legislature's contempt authority negated the district courts' exclusive jurisdiction of this type of proceeding.

As used in the constitutional provision, *jurisdiction* is the legal power and authority of a court to hear and determine an action or proceeding. See LSA–C.C.P. Art. 1. *Exclusive*, of course, means nonconcurrent. For concurrent jurisdiction to exist, another court must have been granted the legal power and authority to entertain the same type of action. It must have jurisdiction over the same subject matter.

The obvious purpose of limiting appeals in this category to matters within the exclusive jurisdiction of the district courts was to deny appeals in civil matters involving one hundred dollars or less, of which the Justices of the Peace have concurrent jurisdiction. See Art. 7, Sect. 48, Louisiana Constitution. The investiture of contempt authority in the Legislature does not render the district court's jurisdiction concurrent. Since the district courts are the only courts with original jurisdiction over the subject matter, that jurisdiction is exclusive.

I am of the opinion, therefore, that the contempt judgment is appealable. My conclusion in this regard is supported by several decisions of the intermediate courts of appeal. See, e. g., Asp, Incorporated v. Capital Bank & Trust Company (Joint Legislative Committee v. Broussard; Joint Legislative Committee v. Pinell) La.App., 174 So.2d 809; Louisiana State Board of Medical Examiners v. Heiman, La.App., 230 So.2d 405.

In reaching this determination, I am aware of the jurisprudential rule denying an appeal from contempt adjudications for direct affronts to the dignity of a court, in which sentence is imposed to vindicate the authority of the court and protect the judicial process. See State ex rel. Milling v. Louisiana Public Service Commission, 154 La. 752, 98 So. 175 (1923); State ex rel. Dowling v. Ray, 150 La. 1030, 91 So.

443; (1922); White v. Louisiana & Arkansas Railway Company, La.App., 94 So. 2d 95 (1957); State ex rel. Connerly v. Tangipahoa Parish School Board, La.App., 9 So.2d 826 (1942); 17 Tul.L.Rev. 655, 656–657 (1943).

In my opinion, however, the rationale of these decisions is inapplicable here. The present action is an independent adversary proceeding between two litigants. The proceeding involves both the law and the facts. The facts must be established in accordance with regular procedures. As in other civil matters, the right of appeal is an essential safeguard.

I note, however, that a majority of the Court has concluded that the Court of Appeal has no appellate jurisdiction in the matter. Hence, it becomes necessary for me to record my view on the merits. On the merits, I concur with the majority in affirming the judgment of contempt rendered by the Nineteenth Judicial District Court for the Parish of East Baton Rouge.

For the reasons assigned, I respectfully concur in part and dissent in part.

DIXON, Justice (concurring in part and dissenting in part).

I concur in that part of the majority opinion which holds that the Court of Appeal is without jurisdiction over an appeal from a conviction of contempt of the legislature.

However, I must respectfully dissent from affirming the conviction.

There is little doubt, in my opinion, that the legislature could constitutionally provide for the punishment of a member in the manner provided in the concurrent resolution here involved, under the grant of power of Article 5, § 17 and Article 3, § 10 of the Louisiana Constitution of 1921.

But the legislature made no such provision. Its only reference to contempt punishment cited Article III, Section II, which we believe means Article III, Section 11, which deals only with punishment of *non-members* of the legislature. This reference, and the failure to mention the punishment of members under Article 3, § 10, is convincing that the legislature did not intend that this committee be delegated the power to punish a member for contempt. The judgment of the district court ought to be reversed.

TATE, Justice (dissenting).

The writer concurs in that portion of Justice SANDERS' dissent to the effect that, for the purposes of appellate jurisdiction, the present case must be classified as an original *civil* proceeding and, thus, appealable to the court of appeal. The majority errs, in my opinion, in holding otherwise

If, however, we reach the merits, I likewise cannot agree with the opinion of the

majority of this court. Our reasoning overlooks the limited contempt power granted by the legislature as a whole to this particular committee through the instant resolution.

As the majority opinion quotes, the resolution grants the committee (1) the authority to file contempt proceedings in any court of competent jurisdiction for punishment *in accordance with Article III, Section 11* of the Constitution and (2) *"in addition to"* this power, the power to invoke the provisions of La.R.S. 24:4 through 24:6 for punishment of contempts of the legislature.

The latter power may be briefly disposed of, as it was not used. The statute in question, quoted in footnote 2 of the majority opinion, authorizes the legislature to certify instances of contempt to the district attorney for *criminal* prosecution. A *criminal* proceeding of this nature, to be brought by the district attorney, is not at all involved here—instead, the legislative committee, through its own private counsel (*not* the district attorney), instituted a rule to show cause why Dr. Strain should not be held in contempt.

The legislative committee thus did *not* use the La.R.S. 24:4 remedy authorized by the resolution. (The cited statutory remedy for contempt is expressly declared "to be *supplemental to* the powers of the legislature and of the senate and of the house of representatives to punish for contempt." La.R.S. 24:4, subd. C as quoted in footnote 2, majority opinion.)

Instead, the committee sought to avail itself, in the words of the resolution creating it, of "the power and authority to institute proceedings in *any court of competent jurisdiction*[1] for the punishment thereof [i. e., of a contempt] in accordance with the penalties fixed by Article III, Section 11 of the Louisiana Constitution". See resolution, quoted in majority opinion. However, Art. III, Section 11 authorizes the punishment *only* of "any person not a member" of the legislature.

Strain, a member of the legislature, cannot be held in contempt by reason of any authority emanating from this constitutional provision, it seems to me, for the provision expressly authorizes punishment for contempt *only* of persons *not* members of the legislature.

In failing to agree, the majority points out that the resolution *additionally* authorizes punishment by criminal prosecution under La.R.S. 24:4, which permits criminal punishment (but with the safeguards of criminal law) of "any" person. Nevertheless, the present contempt proceeding was *not* a criminal prosecution

---

1. (Italics the writer's.) The present, being a civil proceeding for procedural purposes (since not regulated by Code of Criminal Procedure), the proper venue is the defendant's domicile (Caddo Parish). La. Code Civil Procedure Art. 42.

brought under the cited statute. With due respect, I find to be a non sequitur the conclusion that, because of this statute (prosecution under which was *not* here utilized and which is *not* here involved), the present contempt proceedings were properly brought against a legislator by virtue of authority derived from Article III, Section 11 (which authorizes contempt punishment only of *non*-legislators).

I therefore join in Justice DIXON's dissent as to this issue. The legislative intent expressed by the resolution, especially its reliance on Article III, Section 11, does not seem to contemplate summary punishment by rule of legislators.

Likewise, I should add, I cannot completely disregard Representative Strain's defense that he was not required to attend the *present* committee's hearing because, on the same date, he was required by his legislative status to attend a hearing of *another* legislative committee (one which as chairman he had called for the same date at a different location in the state.)

This contention seeks to raise the issue that one committee of the legislature cannot disrupt or prevent hearings of another, by subpoenaing as witnesses the legislator-members of the latter. The majority, it seems to me, does not satisfactorily reject this contention by simply stating one legislative committee can hold members of another in contempt (for failing to respond to subpoenas for a meeting conflicting with their own) because the legislature itself was not in session. If, for instance, Dr. Strain's committee had subpoenaed the present committee's members to appear before it on the same date as the present hearing, then they would be in contempt of Dr. Strain's committee, under the majority reasoning—while, at the same time, Dr. Strain would remain in contempt of the present committee for failing to appear at its hearing of the same date.

Dr. Strain's solemn assertion that this (self-created) legislative duty prevented his appearance as a witness at the present hearing previously called for the same time is somewhat ingenuous and jesuitical and may possibly lack merit (for reasons not yet discovered by the majority or me) under the facts of this case. The argument nevertheless points out a fundamental reason why our state constitution provides differently for contempt punishment of legislators (Art. III, Section 10) and of non-members of the legislature (Art. III, Section 11)—the overriding importance, despite possible abuses, of protecting the independence of legislators in their representation of their people, and of protecting members of the legislature from punishment or harassment by others of the legislature (whether the latter be the majority or minority) because of differences of values and views in the performances of legislative duties.

I share the view of our majority that it is the unquestioned duty of all citizens, whether they be legislators or not, to co-operate in legitimate legislative investigations such as the present. I cannot, however, simply because I disapprove of the non-cooperative conduct in question, overlook the provisions of our state constitution and of the present legislative resolution which, in my view, forbid our sanctioning the present summary shortcuts in procedure and logic.

I therefore respectfully dissent.

ON REHEARING IN NO. 51605.

HAMLIN, Justice:

Rehearing was granted in this case, combined on original hearing with Case No. 51,567 of the docket of this Court, rehearing denied, in order that we might reconsider some of the legal issues raised and adjudicated on original hearing.

On February 4, 1971, the Joint Legislative Committee of the Legislature of the State of Louisiana, created by Senate Concurrent Resolution No. 31, as amended by Senate Concurrent Resolution No. 76 of the Louisiana Legislature of 1970 (hereinafter referred to as the Committee), through its chairman, instituted this contempt action in the 19th Judicial District Court, Parish of East Baton Rouge, State of Louisiana, praying that:

"(1) A rule nisi issue herein directed to the defendant, Representative James R. Strain, ordering him to show cause, at a time and date to be fixed by this Honorable Court, why he should not be adjudged guilty of contempt of the Joint Legislative Committee and of the Legislature for failure to appear and for failure to produce documents, papers and records.

"(2) In due course defendant be adjudged guilty of contempt of the Joint Legislative Committee and the Legislature, and be punished according to law."

After trial on the merits, numerous exceptions filed by the defendant having been overruled, the district court on March 8, 1971, adjudged James R. Strain (Dr.) in contempt of the Committee and of the Louisiana Legislature by reason of failure to respond to a subpoena and to a subpoena duces tecum served upon him and requiring him to appear before the Committee at a hearing on February 4, 1971. The trial court ordered that as punishment for such contempt, the defendant be confined to the East Baton Rouge Parish Jail for a period of ten days in accordance with Art. III, Sec. 11, La.Const. of 1921,[1] and Senate Concurrent Resolution No. 31, as amended

1. "Either house, during the session, may punish by imprisonment any person not a member who shall have been guilty of disrespect, or disorderly or contemptuous behavior; but such imprisonment shall not exceed ten days for each offense." Art. III, Sec. 11, La.Const. of 1921.

by Senate Concurrent Resolution No. 76 of the Louisiana Legislature of 1970, said period of confinement to commence upon further order of the court. Defendant appealed to the Court of Appeal, which court dismissed his appeal.

We granted defendant's application to review the judgment of the Court of Appeal, First Circuit, which dismissed his appeal, 248 So.2d 105, 259 La. 697, 252 So.2d 433, No. 51,567 of the docket of this Court, as well as his application to review the judgment, supra, of contempt rendered by the trial court. 248 So.2d 105, 259 La. 698, 252 So.2d 433, No. 51,605 of the docket of this Court.

On original hearing, we affirmed the judgment of the Court of Appeal, supra, and as stated supra denied rehearing; we affirmed the judgment of the trial court, supra, finding James R. Strain guilty of contempt.

Herein, defendant-applicant for rehearing urges:

1. "It was an error to hold, that notwithstanding the Declinatory Exception to the Venue filed by Representative James R. Strain [Representative Strain], a domiciliary of Caddo Parish, Louisiana, that this matter was properly heard by the Civil District Court in East Baton Rouge Parish."

2. "It was also an error to hold that the District Court had the authority to punish Representative Strain for contempt of the Legislature."

3. It was error not to issue an order for missing parts of the record.

4. "The majority opinion erred in holding that Strain was not immune from appearing at the Committee meeting just because he was conducting his own Legislative Committee Meeting of the Statewide Health Service Committee, which was also a joint legislative committee."

The Committee urges that the judgment of the district court should be affirmed.

Senate Concurrent Resolution No. 31, signed May 21, 1970 by the Lt. Governor, President of the Senate, and the Speaker of the House, provided in part:

"WHEREAS, a number of unsubstantiated allegations have been made of criminal influences upon the government of this state and its political subdivisions and that certain elected and/or appointed officials and employees of the state and its political subdivisions have been and/or are being influenced by members of organized crime; and

"WHEREAS, the responsibilities of the Legislature to the citizens of Louisiana demand that allegations of this kind not be allowed to stand without investigation to determine their veracity and to present the actual facts of the situation to the people and, if necessary, to the proper law enforcement officials for action, as well as

to provide information upon which the Legislature may take such steps as are required to protect the people of Louisiana against any influences upon the government which serves them which can be attributed to organized crime or, if none exist, then to make known this fact in order to restore public confidence in government and in the public officials who serve it.

"THEREFORE BE IT RESOLVED by the Senate of the Legislature of Louisiana, the House of Representatives thereof concurring, that there is hereby created a joint legislative committee which shall be composed of seven members, three of whom shall be appointed by the President of the Senate from the membership of the Senate and four of whom shall be appointed by the Speaker of the House of Representatives from the membership of the House, and which shall undertake an immediate comprehensive, in-depth investigation, inquiry and hearings into all matters relating to the question of influences on the government of this state and/or its political subdivisions and the officials and employees of either.

" * * *

"BE IT FURTHER RESOLVED that there is hereby created an advisory committee which shall have authority to attend all meetings, public and private, of the joint legislative committee herein created, and shall consult, advise with and offer assistance, consultative services and recommendations to said joint legislative committee.

"BE IT FURTHER RESOLVED that the advisory committee above provided for shall be composed of the chairman of the Louisiana Commission on Law Enforcement and Administration of Criminal Justice; the respective deans of the Louisiana State University Law School, Tulane University Law School, Southern University Law School and Loyola University Law School; the president of the Louisiana AFL–CIO and the president of the Louisiana State Chamber of Commerce.

" * * *

"BE IT FURTHER RESOLVED that the committee shall have the power and authority to hold hearings, subpoena witnesses, administer oaths, compel the production of books, documents, and records, papers public or private, and to do all other things necessary to accomplish the purposes of this Resolution. * * *

"BE IT FURTHER RESOLVED that failure to comply with any order of the committee issued in accordance with or under authority of this Resolution, refusal to testify, or any act of disrespect of or disorderly or contemptuous behavior before the committee shall constitute contempt of the committee and the committee, through its counsel, *shall have the power and authority to institute proceedings in*

*any court of competent jurisdiction for the punishment thereof in accordance with the penalties fixed by Article III, Section 11 of the Louisiana Constitution,* and, in addition, false swearing or perjury before the committee shall in like manner, be punished in accordance with the laws of the state.[2] [Emphasis ours]

"BE IT FURTHER RESOLVED that in addition to the power and authority of

2. The Committee's petition for a rule to show cause why Representative Strain should not be punished for contempt alleged in part:

"5.

"The Committee is required by the Resolution to submit its final report and recommendations to the Legislature and the Governor not later than thirty days prior to the day on which the 1971 Legislature convenes in regular session.

"6.

"Since May, 1970, the Committee has been conducting its investigation and has held a series of hearings at which many witnesses have testified.

"7.

"Representative James R. Strain * * * has previously appeared before the Committee, and testified, under oath, relative to an alleged attempt or attempts to unlawfully influence his vote during the 1970 session of the Legislature.

"8.

"Subsequent to that appearance, the Committee is informed and believes, and upon such information and belief alleges, that Representative Strain has publicly stated that he has in his possession certain evidence, including tape recordings, related to that matter, which he did not previously present to the Committee.

"9.

"On January 28, 1971, the Committee issued a subpoena directed to Representative Strain, ordering him to appear before the Committee at two o'clock P.M. on Thursday, February 4, 1971, at the State Capitol Building in Baton Rouge, Louisiana.

"10.

"That subpoena was personally served upon Representative Strain on January 29, 1971, by an officer of the Louisiana State Police.

"11.

"On January 28, 1971, the Committee issued a subpoena duces tecum directed to Representative Strain, ordering him to appear before the Committee at two o'clock P.M. on Thursday, February 4, 1971, at the State Capitol Building, Baton Rouge, Louisiana, and to bring with him and produce the following documents, papers or records:

"(a) Any and all recordings, including tape recordings, of conversations which may have occurred between Representative James Strain and any of the following persons:

"Governor John J. McKeithen,

"Representative Carl Wagner,

"Mr. Victor Bussie.

"(b) Any and all transcripts or excerpts thereof of the aforesaid recordings.

"12.

"The subpoena duces tecum was personally served upon Representative Strain on January 29, 1971, by an officer of the Louisiana State Police.

"13.

"At two o'clock P.M. on Thursday, February 4, 1971, the Committee met in public session at the State Capitol Building in Baton Rouge, Louisiana, at which time Representative Strain did not appear and did not produce the documents, papers or records called for.

"14.

"Representative Strain is therefore in contempt of the Committee and the Legislature."

the committee to punish for contempt as provided in Article III, Section 11 of the Constitution, the committee also shall have the power and authority to invoke the provisions of R.S. 24:4 through R.S. 24:6 in order to subject persons guilty of contempt of the committee to the penalties provided for therein.[3]

"＊　＊　＊"

Senate Concurrent Resolution No. 76, signed June 9, 1970 by the Lt. Governor, President of the Senate, and Speaker of the House, spelled out the powers of the Advisory Committee. It provided: "that the members of the advisory committee ＊　＊　＊ shall have the right and authority to freely and orally propound questions to all witnesses appearing before the said joint legislative committee to the same extent as other members of said committee so long as same is conducted in an orderly and parliamentary fashion."

---

3. La.R.S. 24:4 provides:

"A. Whenever the legislature or either house of the legislature, or whenever any committee of either house or any joint committee of both houses or any sub-committee of any such committee, which committee, joint committee or sub-committee has been specifically and expressly granted the subpoena power, *has summoned any person as a witness to give testimony or to produce papers or other evidence upon any matter under inquiry before such house, committee, joint committee or sub-committee, such person shall be guilty of contempt of the legislature if he or she*

"*(1) willfully defaults by failing to appear or to produce papers or other evidence, as ordered,* or

"(2) having appeared, refuses to take the oath or affirmation of a witness, or

"(3) having appeared, refuses to answer any question pertinent to the question under inquiry. [Emphasis ours]

"B. Whoever is found guilty of contempt of the legislature under the provisions of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than six months, or both.

"C. The provisions of R.S. 24:4 through R.S. 24:6 *are hereby declared to be supplemental to the powers of the legislature and of the senate and of the house of representatives to punish for contempt, and the legislature hereby reserves to itself and to the senate and to the*

*house of representatives all inherent and all constitutional powers to punish for contempt.*" (Emphasis ours)

La.R.S. 24:5 provides:

"Whenever a statement of facts alleged to constitute contempt under R.S. 24:4 is reported to either house of the legislature while the legislature is in session, or whenever, while the legislature is not in session, such statement is reported to and filed with the president of the senate or the speaker of the house of representatives, said president or speaker, as the case may be, shall certify the statement to the district attorney of a district where venue lies, as provided in the general laws governing venue or as provided by R.S. 24:6 in the case of offenses defined in R.S. 24:4(A), and the district attorney shall institute and prosecute a criminal proceeding against the accused for contempt of the legislature under the provisions of R.S. 24:4."

La.R.S. 24:6 provides:

"Any other provisions of law to the contrary notwithstanding, any offense defined by the provisions of R.S. 24:4(A) shall be deemed to have been committed (1) in the parish where the subpoena issued, (2) in the parish where the offender was served with the subpoena or (3) in the parish where the subpoena ordered the offender to give testimony or to produce papers or other evidence, and the trial of the offender for such offense may take place in any of such parishes."

▇▇▇ During argument on rehearing in this Court, the question was raised as to whether the present matter is now moot because of the fact that the Committee is no longer in existence, and defendant, if permitted and willing to do so, would no longer be able to purge himself of contempt by giving testimony and producing records, tapes, etc.

We do not find that this matter is moot. Defendant's disobedience was committed during the life of the Committee, and the sentence of the district court was rendered during March, 1971. Defendant made no attempt to purge himself; at all times, he refused to comply with the Committee's demands. He made no attempt to purge himself after the trial court sentenced him; he made no attempt to purge himself before the 1971 Legislature adjourned. He appealed his sentence to the Court of Appeal; he applied to this Court for writs. His counsel argued the case herein on original ·hearing; his counsel applied for this rehearing and appeared on the day of argument, urging the errors, supra, assigned to our original opinion and decree.

Assignment of Error No. 1, supra, avers that it was error for the Civil District Court in East Baton Rouge Parish to hear

this matter. Because of findings which we shall make infra, and because of the thorough manner in which this assignment was treated in our original opinion, there is no need for a further discussion of venue. The 19th Judicial District Court, Parish of East Baton Rouge, under the instant facts and circumstances, was vested with jurisdiction to hear this contempt proceeding and thereafter impose sentence.

Dr. Strain next contends (Assignment of Error No. 2) that the 19th Judicial District Court did 'not have authority to punish him for contempt of the Legislature. He argues that as a member of the Legislature, he was exempt from the provisions of Art. III, Sec. 11, La.Const. of 1921; he further argues that LSA–R.S. 24:4 through LSA–R.S. 24:6 are inapplicable here, for, by their terms (R.S. 24:4C), the Legislature reserved unto itself and to the Senate and to the House of Representatives all inherent and all constitutional powers to punish for contempt. This reserved power as it relates to Dr. Strain as a Representative, defendant asserts, is embodied within Art. III, Sec. 10, La.Const. of 1921.[4] He further asserts: "Since the power of the courts to punish for contempt is limited by law [1921 Constitution of the State of

---

4. "Each house shall be the judge of the qualifications, election, and returns of its own members, choose its own officers, except the president of the Senate, determine the rules of its procedure, not 'inconsistent with the provisions of this Constitution, and may punish its members for disorderly conduct and contempt, and, with the concurrence of two-thirds of all its members elected, may expel a member." Art. III, Sec. 10, La.Const. of 1921.

Louisiana, Article XIX, Section 17] and since the power to adjudge one to be guilty of contempt and to order his confinement is a power which can only be exercised in strict conformity with the rules of procedure which the laws of a state provide as a prerequisite to the validity of an adjudication of contempt [Ex parte Battelle, 207 Cal. 227, 277 P. 725, 735], Representative Strain could not have been guilty of contempt of the legislature for the only reference in Senate Concurrent Resolution No. 31 to contempt punishment was to Article III, Section II (sic.), which deals only with punishment of non-members of the legislature and R.S. 24:4 through 24:6, which, even if applicable to legislators, was not used."

Initially, we shall discuss the nature, legality, and effect of legislative resolutions.

"* * * A resolution is not a law or an ordinance but merely the form in which a legislative body expresses a determination or directs a particular action. An ordinance prescribes a permanent rule for conduct of government, while a resolution is of special or temporary character. * * *" Kalamazoo Municipal Util. Ass'n v. City of Kalamazoo, 345 Mich. 318, 76 N.W.2d 1 (1956).

"Generally, it may be said that a legislative body uses a resolution to express an opinion or purpose with respect to a given matter or thing and it is tempo-

rary in nature, while a law is intended to direct and control permanently matters applying to persons and things in general. This definition has been variously expressed in: City of Cape Girardeau v. Fougeu, 30 Mo.App. 551, 557; Ex parte Hague, 104 N.J.Eq. 31, 144 A., 546, 559; Chasis v. Tumulty, 8 N.J. 147, 84 A.2d 445, 449[3]; Scudder v. Smith, 331 Pa. 165, 200 A. 601, 604; Steward v. Rust, 221 Ark. 286, 252 S.W.2d 816; Wilder v. American Produce Co., Tex.Civ.App., 147 S.W.2d 936, 938." State v. Atterbury, 300 S.W.2d 806 Mo. (1957).

" 'Resolution' is also defined as meaning a suggestion or direction in writing, concurred in by the two houses of the assembly, if there be two houses, or passed by one house, if there be but one, and not submitted to the executive for his approval. * * *

"A resolution is variously described as being administrative or ministerial in character; special and temporary in character. It deals with matters of a special or temporary character, and has only a temporary effect.

"A resolution is not a law, but is the mere expression of an opinion, or merely the form in which the legislative body expresses an opinion, and is used whenever the legislative body passing it wishes merely to express an opinion concerning some given matter or thing. It is, gen-

erally, not an order, but a mere expression of view on which an order issues to make it effective." 77 C.J.S. Resolution, p. 314.

" 'A resolution or order is not a law, but merely the form in which the legislative body expresses an opinion. * * * mere ministerial acts may be in the form of resolutions.' Other jurisdictions have been even more explicit in stating that an oral motion is a form of resolution. Meade v. Dane County, 155 Wis. 632, 145 N.W. 239, says: 'An oral motion passed by the common council of a city thereupon becomes a resolution.' It was likewise so stated in City of Green Bay v. Brauns, 50 Wis. 204, 6 N.W. 503." Steward v. Rust, 252 S.W.2d 816 (Ark. 1952).

Art. V, Sec. 17, La.Const. of 1921, provides:

"Orders, votes and resolutions of either or both houses of the Legislature, affecting the prerogatives and duties thereof, or relating to adjournment, to amendments to the Constitution of this State or of the United States, to the investigation of public officers, and the like, shall not require the signature of the Governor; and such resolutions, orders and votes may empower legislative committees to administer oaths, to send for persons and papers, and generally make legislative investigations effective." Cf.

Joint Legislative Committee v. Fuselier, 174 So.2d 817 (La.App.1965); Sullins v. City of Shreveport, 252 La. 423, 211 So. 2d 314; Sylvestre v. St. Landry Parish School Board, 164 La. 204, 113 So. 818.

■ Defendant in essence urges that a legislative act rather than a resolution was necessary to give the Committee the powers which it exercised against him.

■ We find that the Legislature had the power under the above authorities, particularly our Constitution, and those to be cited and quoted infra, to pass the instant resolution. It also had the right to incorporate into the resolution the provisions which herein affect the defendant. We find no prohibition in our Constitution restricting or forbidding the enactment of a resolution such as Senate Concurrent Resolution No. 31, as amended by Senate Concurrent Resolution No. 76. It is a familiar doctrine, that the Legislature of a State, unlike Congress, which cannot do anything which the Federal Constitution does not authorize, may do everything which the State Constitution does not prohibit. Ricks v. Department of State Civil Service, 200 La. 341, 8 So.2d 49 (1942). Defendant has not proved that the present resolution is unconstitutional. Cf. State v. Guidry, 247 La. 631, 173 So.2d 192; Hamilton v. Mc-Keithen, 254 La. 683, 226 So.2d 494; Joint Legislative Committee v. Fuselier, 174 So. 2d 817.

Having found that the Legislature had the right to create the Committee, we now find that the Committee was a Legislative Committee and possessed certain powers inherent in the Legislature; the Committee was constituted an agent of the Legislature, possessing a reasonable delegation of the authority of the Legislature to do what the Legislature, composed of more than 100 members, could do. It avoided cumbersome, expensive procedure by acting efficiently.

The purpose for the creation of the Committee set forth in Senate Concurrent Resolution No. 31 was a legitimate one. The investigations directed by the resolution were vital to the State of Louisiana. The following statement by the United States Supreme Court in Watkins v. United States, 354 U.S. 178, 77 S.Ct. 1173, 1 L.Ed. 2d 1273 (1957), is applicable herein:

"We start with several basic premises on which there is general agreement. The power of the Congress to conduct investigations is inherent in the legislative process. That power is broad. It encompasses inquiries concerning the administration of existing laws as well as proposed or possibly needed statutes. It includes surveys of defects in our social, economic or political system for the purpose of enabling the Congress to remedy them. It comprehends probes into departments of the Federal Government to expose corruption, inefficiency or waste.

But, broad as is this power of inquiry, it is not unlimited. There is no general authority to expose the private affairs of individuals without justification in terms of the functions of the Congress. This was freely conceded by the Solicitor General in his argument of this case. Nor is the Congress a law enforcement or trial agency. These are functions of the executive and judicial departments of government. No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress. Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible.

"It is unquestionably the duty of all citizens to cooperate with the Congress in its efforts to obtain the fact needed for intelligent legislative action. It is their unremitting obligation to respond to subpoenas, to respect the dignity of the Congress and its committees and to testify fully with respect to matters within the province of proper investigation. This, of course, assumes that the constitutional rights of witnesses will be respected by the Congress as they are in a court of justice."

▬ Art. III, Sec. 10, La.Const. of 1921, supra, recites that each house of the Legislature may punish its members for contempt; there are no penalties spe-

cifically provided except expulsion; it does not provide that each house shall be the exclusive condemnor of its members. We find no logical reason why the Legislature could not by the instant resolution provide for judicial enforcement of contempt of a legislative committee by a court of competent jurisdiction. Assigned to the judiciary were judicial matters of which it could accept jurisdiction.

Senate Concurrent Resolution No. 31 authorized the institution of contempt proceedings in any court of competent jurisdiction and stated that punishment should be in accordance with the penalties fixed by Art. III, Sec. 11, La.Const. of 1921— not to exceed ten days for each offense. The resolution also stated that the Committee had the additional power to invoke the provisions of LSA–R.S. 24:4 through LSA–R.S. 24:6. This additional power was a supplementary grant. LSA–R.S. 24:4, supra, recites that "any person" shall be in contempt if he willfully defaults by failing to appear or to produce papers or other evidence as ordered. LSA–R.S. 24:4 therefore applied to Dr. Strain, and its provisions were and are applicable herein. Thus, as stated in our original opinion, the Committee's authority to punish for contempt extended to both members and non-members alike. There is no limitation on a legislator's refusing to testify.

As found in our original opinion, LSA–R.S. 24:5, supra, is not exclusive. Proceedings by petition for rule to show cause were proper under the instant facts and circumstances. If the Committee had the right to subpoena, which we have found that it did, then it had the right to institute the present proceedings. "An individual does not move beyond the restraints of law, common or statutory, when he accepts membership in the Legislature. He remains subject to them except insofar as they preclude acceptance of legislative office by one constitutionally qualified for it or impair performance of legislative duties." Reilly v. Ozzard, 33 N.J. 529, 166 A.2d 360, 89 A.L.R.2d 612.

LSA–R.S. 24:4, subd. C provides that the Legislature reserves to itself and to the Senate and to the House of Representatives all inherent and all constitutional powers to punish for contempt. The reservation does not prohibit the Legislature's permitting the judiciary to punish. Therefore, the reservation, peculiar to the Legislature, could be given up by the Legislature in instances where it thought it more judicious and expedient for another branch of government to assess punishment. It is legion that laws should be read together in order to give them proper and intended effect.

Defendant (Assignment of Error No. 3) contends that certain missing parts of the record should have been ordered to be produced in this Court. Absent these rec-

ords, we have been able to decide this matter; therefore, we find defendant's contention without merit.

With respect to Assignment of Error No. 4, we correctly stated in our original opinion:

"In a motion for summary judgment Representative Strain alleges that on the date (February 4, 1971) when he was ordered to appear before the committee in the city of Baton Rouge, he, as chairman, was conducting a hearing of the Statewide Health Service Committee, a committee established by House Concurrent Resolution No. 95 of the Extraordinary Session of 1968. For this reason, he argues, he could not be punished for contempt. Without citing authority for his position, he contends that members of the legislature are exempt, that is, not subject to the power of subpoena or any other judicial process, during terms of the legislature or while in attendance at duly constituted legislative committee hearings.

"While Section 1 of Title 24 of the Revised Statutes stays civil proceedings against members of the legislature 'during their attendance at the sessions of their respective houses,' it grants no such exemption from subpoena or attendance at a duly constituted legislative committee hearing."

We do not find from an examination of the record that Dr. Strain had subpoenaed, summoned or requested any members of the Committee to appear before *his* committee on February 4, 1971. We find no interference of the prerogatives of one committee with those of another committee. The record does not disclose that it would have been impossible or inexpedient for Dr. Strain to have delegated his chairmanship duties to another member of *his* committee during the time he was called upon to testify. The record is devoid of a showing that Dr. Strain was precluded from having his committee meet on a date other than February 4, 1971. The record is also devoid of a showing of cooperation between Dr. Strain and the Committee with respect to the instant subpoena. Under these facts and circumstances, Assignment of Error No. 4 is without merit.

For the reasons assigned and for the reasons assigned in our original opinion, the judgment and decree originally rendered in this matter is approved, reinstated, and made the final judgment of this Court.

BARHAM, J., dissents adhering to original opinion.

TATE, J., dissents for reasons assigned on original hearing.

DIXON, J., dissents.